UNITED STATES v. GREENE et al.

(District Court, S. D. Georgia, E. D. February 8, 1906.)

CRIMINAL LAW—EVIDENCE—BOOKS OF THIRD PERSONS.

> Entries regularly made in the books of a business concern in the usual course of business and contemporaneously with the transactions which they record, especially when supported by the testimony of the employé who made them as to their correctness, are admissible as evidence of the facts shown thereby in a suit between third persons, or on the trial of a criminal prosecution against third persons.
>
> [Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 1023.]

On Objection of Defendants to Admission of Evidence See 115 Fed. 343.

Marion Erwin, U. S. Atty., Samuel B. Adams and Thomas F. Barr, Sp. Assts. to U. S. Atty., and Alexander Akerman, Asst. U. S. Atty.

William Garrard, Peter W. Meldrim, William W. Osborne, and Alexander A. Lawrence, for defendants.

SPEER, District Judge (orally). The admissibility of books of this general character, merchants,' tradesmen's, bankers' books, or any books keeping regular record of transactions, has very ancient origin. Under the civil law the production of merchants' and tradesmen's books of accounts regularly and fairly made in the usual manner was deemed presumptive evidence. And says Mr. Greenleaf (section 116, p. 146):

"And, generally, contemporaneous entries made by third persons"

which is this case

"in their own books, in the ordinary course of business, the matter being within the peculiar knowledge of the party making the entry, and there being no apparent and particular motive to pervert the fact, are received as original evidence, though the person who made the entry has no recollection of the fact at the time of testifying, provided he swears that he should not have made it, if it were not true."

It was in order to meet that requirement that the question was asked this witness whether he would have made an entry if it were not true.

"The same principle has also been applied to receipts, and other acts contemporaneous with the payment or fact attested."

Again, the entries of third persons are admitted upon the following principles:

Where the "entries consists of those which constitute parts of a chain or combination of transactions between the parties, the proof of one raising a presumption that another has taken place. Here the value of the entry, as evidence, lies in this: that it was contemporaneous with the principal fact done, forming a link in the chain of events, and being part of the res gestæ. It is not merely the declaration of the party, but it is a verbal contemporaneous act, belonging, not necessarily, indeed, but ordinarily and naturally, to the principal thing. It is on this ground that this latter class of entries is admitted, and therefore it can make no difference, as to their admissibility, whether the party who made them be living or dead, nor whether he was, or was not, interested in making them; his interest going only to affect the credibility or weight of the evidence when received."

The reason would be stronger if there should be no interest at all.

Now, are the entries trustworthy? That is the crucial question. We are after the truth in this case. What motive appears from the evidence which would have induced this gentleman, the bookkeeper of this New York concern, to have made untrustworthy entries? None whatever appears, and, indeed, he testifies to his knowledge of each particular transaction with reference to which these entries are made. A very learned discussion of this topic will be found in the recent and valuable work of Wigmore on Evidence (volume 2, par. 1522):

"The reasons justifying the admission of this class of statements, untested as they are by cross-examination"

and they may be tested here,

"have not been as clearly defined by the judges as in other hearsay exceptions; but they seem fairly clear. They fall within the second general type already described; i. e., the situation is one where, even though a desire to state falsely may casually have subsisted, more powerful motives to accuracy overpower and supplant it. In the typical case of entries made systematically and habitually for the recording of a course of business dealings, experience of human nature indicates three distinct, though related, motives which operate to secure, in the long run, a sufficient degree of probable trustworthiness and make the statements fairly trustworthy."

The first of these is:

"The habit and system of making such a record with regularity calls for accuracy through the interest and purpose of the entrant [that is, the bookkeeper], and the influence of habit may be relied on, by very inertia, to prevent casual inaccuracies, and to counteract the casual temptation to misstatements. This reason has been referred to in the following passage: 'Tindal, C. J., in Poole v. Dicas, 1 Bing. N. C. 649: It is easier to state what is true than what is false; the process of invention implies trouble, in such a case unnecessarily incurred.'"

Why should this gentleman have exerted in any unnecessary manner his invention to have made inaccurate entries in these books at the time these entries were made? Again:

"Since the entries record a regular course of business transactions, an error or misstatement is almost certain to be detected and the result disputed by those dealing with the entrant. Misstatements cannot safely be made, if at all, except by a systematic and comprehensive plan of falsification."

This might be illustrated, if there was any evidence before the court, by the reference of the learned counsel for the defense to certain

insurance companies in New York, which observation, however, could have no possible effect upon the determination of this legal question. "As a rule this fact (if no motive of honesty obtained) would deter all but the most daring and unscrupulous from attempting the task." Mr. Ford does not appear to be a "daring and unscrupulous man." "The ordinary man may be assumed to decline to undertake it. In the long run it operates with fair effect to secure accuracy."

Again:

"If in addition to this, the entrant makes the record under a duty to an employer or other superior"

here he was under duty to Reed & Flagg,

"there is the additional risk of censure and disgrace from the superior, in case of inaccuracies—a motive on the whole the most powerful and most palpable of the three."

This reason has been more than once mentioned, and a number of authorities are cited.

There is, however, perhaps a controlling authority on this subject in the decision of the Supreme Court of the United States, which I hurriedly ascertained during the progress of this argument, in Fennerstein's Champagne Case, 3 Wall. 145, 18 L. Ed. 121. The facts involved are given in the following headnote:

"In order to show the actual market value of merchandise at a particular place in a foreign country, letters by third parties abroad to other third parties, offering to sell at such rates, if written in ordinary course of the business of the party writing them, and contemporaneously with the transaction which is the subject of the suit, are admissible as evidence, even though neither the writers nor the recipients of the letters are in any way connected with the subject of the suit, and though there is no proof that the writers of the letters are dead."

In the case Mr. Justice Swayne said:

"We think the letters in question in this case were properly admitted."

I think they stand upon precisely the same footing as the books here. Indeed, the case at bar is much stronger for the reasons already given— the proven verity of the books, I mean, and their trustworthiness.

"In reaching this conclusion,"

the learned justice continues,

"we do not go beyond the verge of the authorities to which we have referred. In some of those cases the person asserted to be necessary, as a witness was dead. But that can make no difference in the result. The rule rests upon the consideration that the entry, other writing, or parol declaration of the author was within his ordinary business. In most cases he must make the entry contemporaneously with the occurrence to which it relates. In all he has full knowledge, no motive to falsehood, and there is the strongest improbability of untruth. Safer sanctions rarely surround the testimony of a witness examined under oath. The rule is as firmly fixed as the more general rule to which it is an exception. Modern legislation has largely and wisely liberalized the law of evidence."

This decision was made in 1865, and the process of liberalization of the rules of evidence has steadily proceeded from that date to this.

For all these reasons I think the books are clearly admissible.