## LEVI v. STATE OF INDIANA.

[No. 22,444. Filed March 31, 1914. Rehearing denied July 3, 1914.]

1. LARCENY.—Indictment.—Sufficiency.—An indictment charging that certain named persons did on a certain date, at a named county in the State, "then and there unlawfully and feloniously take, steal and carry away of the personal goods and chattels of the Wabash Railroad Company, bailee, four thousand five hundred pounds of clover seed, then and there of the aggregate value of six hundred dollars," was a sufficient charge of grand larceny. p. 190.

2. CRIMINAL LAW.—Trial.—Absent Witnesses.—Admissibility of Testimony on Former Trial.—Showing of Diligence.—In a prosecution for grand larceny the court erred in permitting the court reporter to read from her notes the testimony of certain absent witnesses, given by them on behalf of the State at a former trial of the same case, merely on the showing that subpoenas had been issued for such witnesses and had been returned with the indorsement "not found," where it appeared that the prosecuting attorney knew at the time and prior to the issuance of the subpoenas where such witnesses resided and that they did not reside in the State, that defendant had filed his written consent to taking the depositions of absent witnesses and there was no showing that their evidence was necessary, or of any cause that would have prevented the taking of their depositions. pp. 190, 192.

3. EVIDENCE.—Secondary Evidence.—Admissibility.—In order that secondary evidence may be admitted, it is incumbent on the party offering it to show affirmatively the existence of all facts necessary to show it within the exception to the rule against the admissibility of hearsay. p. 191.

4. CRIMINAL LAW.—Secondary Evidence.—Admissibility.—Discretion of Court.—The admission of the testimony of an absent

witness, given by him on the former trial of a criminal cause, if admissible at all, may be permitted only for the purpose of preventing a miscarriage of justice, where there is a proper showing of circumstances that make it unfair and unreasonable to exclude it, and the question of the necessity of such admission is addressed to the sound legal discretion of the trial court. p. 192.

5. CRIMINAL LAW.—*Misconduct of Prosecutor.*—*Review.*—Where the prosecuting attorney in his closing argument read certain testimony that had been stricken out, and objection thereto was overruled on his statement to the court that the record did not disclose that it had been stricken out, the court erred in thereafter refusing an instruction that such evidence had been stricken out and that it and the prosecutor's remarks should not be considered by the jury, and in giving instead an instruction stating that it appeared from the record that the evidence had been stricken out and that the jury should therefore disregard it, and that the reference by counsel for defendant to the fact that the evidence was not furnished by the State was also withdrawn from the jury, since the instruction given was too vague and uncertain, and defendant was entitled to an emphatic instruction that the jury should not consider such evidence and the remarks of counsel thereon. pp. 194, 196.

6. APPEAL.—*Misconduct of Counsel.*—*Presumptions.*—On appeal appellee has the burden of showing by the record that no injury resulted from misconduct of counsel before the jury, complained of by appellant, and in the absence of such showing it will be presumed to have been harmful to appellant. p. 196.

From Howard Circuit Court; *William C. Purdum,* Judge.

Prosecution by the State of Indiana against Benjamin Levi. From a judgment of conviction, the defendant appeals. *Reversed.*

*McConnell & Stuart, Loveland & Sollett, Albert Ward* and *Bell, Kirkpatrick & Voorhis,* for appellant.

*Thomas M. Honan,* Attorney-General, *Thomas H. Branaman, Conrad Wolf, Cox & Andrews* and *Frank D. Butler,* for the State.

SPENCER, J.—Appellant was charged, jointly with five others, with burglary and grand larceny. The first trial, held in the Miami Circuit Court, resulted in a mistrial by reason of the failure of the jury to agree, and the cause was

thereupon venued to the Howard Circuit Court where, in December, 1912, appellant was convicted of grand larceny. Over a motion for a new trial, he was sentenced by the court to serve a term in prison and from such judgment this appeal is prosecuted.

The first error assigned is that the court erred in overruling the motion to quash the indictment. The count on which appellant was convicted, and as to which such

1. motion is here presented, is as follows: "The Grand Jury of the County of Miami, in the State of Indiana, for a further and second count herein, upon their oath do present, that one Frank Revis, Bert Gay, Theron E. Weaver, Bert Snoke, Letcher Revis and Benjamin Levi did, on the 16th day of January, 1911, at the County of Miami, and State of Indiana, then and there unlawfully and feloniously take, steal and carry away of the personal goods and chattels of the Wabash Railroad Company, bailee, four thousand five hundred pounds of clover seed, then and there of the aggregate value of six hundred dollars. All of which the said Grand Jury do present is contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Indiana." This indictment was properly signed and is a good and sufficient charge of grand larceny.

It is next contended that the court erred in permitting the witness Vally D. Condo, as the stenographer who reported the evidence in the former trial, to read from

2. her shorthand notes to the jury the testimony given in such former trial by four witnesses, M. T. Driscoll, Charles A. Stauffer, Charles Clark and Charles Pitzer. The preliminary hearing by the court as to the admissibility of such evidence shows that, on the direction of the prosecuting attorney, a subpoena was issued to the sheriffs of Miami and Howard counties for such witnesses on November 11, 1912; that M. T. Driscoll and Charles A. Stauffer were residents of Griggsville, Illinois, and nonresidents of In-

diana; that the prosecuting attorney knew they were not in the State and were nonresidents of the State when such subpoena was issued; that they had been present and testified at the former trial in June, 1912, and had not been in the State since that time; that they were employed by the Wabash Railroad Company at Griggsville, Illinois, as local freight agent and assistant local freight agent respectively; that they were the same persons named in the subpoena; that the deposition of the witness Driscoll was taken at Griggsville, Illinois, on May 31, 1912, after the defendant had filed his written consent for the State to take depositions of witnesses. It further appears that the witnesses Clark and Pitzer testified at the trial in June, 1912; that they resided in Toledo, Ohio; that the representatives of the State knew their addresses and knew that they were not in Indiana when the subpoena was issued. There was no showing that any effort was made to secure the attendance of such witnesses other than by the issuance of the subpoena, which was returned with the endorsement "not found". No effort was made to take their depositions for the second trial and no showing was made that their evidence was necessary or that it was exclusive and not to be procured readily through other witnesses.

Appellant seriously insists that under the provisions of Art. 1, §13, of our Constitution he had a right to "meet the witnesses face to face." Appellee concedes this as a general proposition but contends that the evidence in question was properly admitted under an exception to the general rule of law which excludes what is termed "hearsay evidence". From an analysis of the following cases 3. it seems that it is incumbent on the party offering such testimony to show affirmatively the existence of all facts necessary to bring the secondary evidence clearly within the exception, and unless this is done the evidence should be excluded. *Wabash R. Co.* v. *Miller* (1902), 158 Ind. 174, 177; *Sage* v. *State* (1891), 127 Ind. 15; *Bass* v.

*State* (1894), 136 Ind. 165; *Wilson* v. *State* (1911), 175 Ind. 458, 465; *State* v. *Heffernan* (1908), 22 S. Dak. 513, 118 N. W. 1027; note in 25 L. R. A. (N. S.) 868, and cases cited.

We are not unmindful of the cases which seem to hold

4. that where, on a former trial, the defendant has been afforded an opportunity to confront and cross-examine the witnesses, whose evidence is offered to be reproduced, this satisfies the constitutional guaranty that a person accused of a crime shall have an opportunity to meet the witnesses face to face; also, that the admission of such evidence is not limited to instances where the witness whose former evidence is offered, has since died or become insane, but extends also to the former testimony of witnesses who are permanently or indefinitely absent from the State and beyond the jurisdiction of the court in which the case is pending. *Wilson* v. *State, supra; State* v. *Nelson* (1904), 68 Kan. 566, 75 Pac. 505, 1 Ann. Cas. 468; *Hobbs* v. *State* (1908), 53 Tex. Cr. Rep. 71, 112 S. W. 308; *Jacobi* v. *State* (1901), 133 Ala. 1, 32 South. 158. The real basis for the admission of such testimony is to prevent the miscarriage of justice where the circumstances of the case have made it unreasonable and unfair to exclude the same. Thus, the death or insanity of the former witness, the absolute impossibility of securing his presence, his absence by procurement of the defendant, or such nonresidence as will preclude the taking of his deposition, will furnish proper grounds for the admission of his former testimony. The question of the necessity of such admission to prevent a miscarriage of justice, is addressed to the sound legal discretion of the trial court and only the abuse of such discretion can be presented to a court of review. In this case, appellee and the absent wit-

2. nesses were in no different position at the second trial than when the case was tried in June, 1912. Nothing is shown to have occurred that made necessary the introduction of such secondary or hearsay evidence and it does not appear that it was either impracticable or impossi-

ble to secure the attendance of such witnesses. No reason is presented why their depositions could not have been taken and used. The issuance of the subpoenas to the sheriffs of Howard and Miami counties under the direction of the representative of the State, when he knew that the witnesses were in neither of said counties and that the return would show that they could not be found, was a useless and unnecessary act and can hardly be said to be a good faith effort to secure their presence at the trial. It can be explained only on the ground that appellee was preparing to make a showing of what it considered to be diligence, as a basis for the introduction of the former testimony of such witnesses at this trial on the ground that they were out of the jurisdiction of the court. It seems to us that had the same energy and diligence been exercised in an effort to secure the attendance of such witnesses at the trial or to have taken their depositions (where the defendant had properly consented to the taking of the same), this question would not have arisen. If the whereabouts of the witness are known and his deposition could have been taken, the former testimony is inadmissible, and in criminal cases this rule is stricter than in civil cases. Jones, Evidence (2d ed.) §342 (6); *Gastrell* v. *Phillips* (1886), 64 Miss. 473; *Gerhauser* v. *North British, etc., Ins. Co.* (1871), 7 Nev. 174; *State* v. *Heffernan, supra.*

As said in Underhill, Crim. Ev. (2d ed.) §262: "It was formerly doubted, even in civil cases, whether the testimony of a living witness who was absent merely would be received in trial. Though the authorities sustain the rule by which in civil suits the testimony of an absent witness is received not only in case of death, but where he is incompetent by insanity or illness, or mere absence, the criminal courts always hesitate, in the absence of a permissive or mandatory statute, to admit such evidence unless the death or insanity of the witness is shown. The mere

Vol. 182—13

fact that the witness is sick or out of the jurisdiction, or that his whereabouts are unknown so that he cannot be reached by a subpoena, is not enough. The authorities are not wholly harmonious, though usually now, by statute, such evidence is admissible.'' We have no such statute in this State.

As to diligence in procuring the attendance of witnesses, it is said in 1 Wharton, Crim. Ev. (10th ed.) §229: ''While it is difficult to frame a rule stating the kind and degree of proof that should be made as to the absence of a witness, inasmuch as such proof is addressed to the court, on principle, the fact of and the cause of the absence of the witness may be shown, like any other fact, by any evidence satisfactory to the court, and the nature of the diligence used should be judged from the circumstances of each case. Mere absence from the jurisdiction of the court, in a criminal case, is not sufficient ground for the admission of former testimony, nor even where the subpoena has been returned not found * * * .'' We conclude that such diligence was not shown in this case as would authorize the trial court, in the exercise of its discretion, to invoke the exception to the rule heretofore referred to. The court erred in permitting such evidence to go to the jury.

Appellant assigns as grounds in the motion for a new trial, the alleged misconduct of counsel for appellee in his closing argument to the jury and the error of the trial court in refusing to instruct the jury at the time with reference to the statements made by counsel. On December 6, 1912, during the trial of this cause, the witness Sollitt testified that in February, 1900, he found brass belonging to the Wabash Railroad Company on the premises of Samuel Levi (father of appellant). This was ten years before the alleged larceny of clover seed. Appellant's motion to strike out such evidence was sustained, and the court instructed the jury at the time, ''that such testimony was out of the record and therefore that they should

give the matter no consideration whatever.'' On December
20, 1912, counsel for appellee, while making the closing argu-
ment to the jury, read from a typewritten paper what pur-
ported to be the evidence of the witness Sollitt, as tran-
scribed by the stenographer from her shorthand notes. This
transcript did not refer to the action of the court in strik-
ing such evidence from the record nor to the court's in-
struction that no consideration should be given to it. The
judge had left the bench temporarily and had gone to an
adjoining room when counsel for appellee read such evi-
dence to the jury. Appellant objected to the reading there-
of and renewed his objection when the judge resumed the
bench. He insisted that such evidence had been withdrawn
and was not in the record, while counsel for appellee, in the
presence of the jury, contended that he was reading from
the record as furnished by the official court reporter and
that it showed the evidence of the witness Sollitt had not
been stricken out or withdrawn from the jury. The court
sustained this contention, overruled appellant's objection,
and permitted counsel for appellee to read the evidence to
the jury. At the close of the argument, appellant moved
to set aside the submission and discharge the jury because
of such alleged misconduct, which motion the court over-
ruled. Appellant then submitted to the court the follow-
ing instruction and moved that it be given to the jury:
''You are charged, gentlemen of the jury, that Frank D.
Butler, in his closing argument, read to the jury certain
evidence that had been offered by the witness, J. B. Sollitt.
You are charged that this evidence was not permitted by
the court to go to you as competent and legal evidence and
you will, therefore, wholly disregard such evidence.'' This
instruction was refused but in its general instructions the
court charged the jury with reference to the matter as fol-
lows: ''You are charged, gentlemen of the jury, that
Frand D. Butler, in his closing argument, read to the jury
certain evidence that had been offered by the witness, J. B.

Sollitt. You are charged it appears from the record that said evidence had been striken out by the court, and you will, therefore, wholly disregard the same. The reference by Mr. Loveland to the fact that such evidence was not furnished by the State is also withdrawn from the jury and stricken out and is not to be considered by the jury.'' Just why the court should qualify the striking out of such evidence, by the use of the expression ''it appears from the record that such evidence had been stricken out'' instead of emphatically and unequivocally stating to the jury that such evidence had been stricken out is not apparent, but the use of the last sentence in the instruction: ''The reference by Mr. Loveland to the fact that such evidence was not furnished by the State is also withdrawn from the jury and stricken out and is not to be considered by the jury'' is obviously so in conflict with the first part of the instruction that if it does not abrogate the first part, it so mollifies it as to leave the minds of the jurors in an uncertain state, as to what is really stricken out and what was to be considered by them. The presumption is that such conduct on the part of counsel for appellee was prejudicial to the rights of appellant and harmful. The burden is on appellee to show by the record that no injury resulted. *Miller* v. *State* (1910), 174 Ind. 255, 258, and cases there cited; *Perry, etc., Stone Co.* v. *Wilson* (1903), 160 Ind. 435, 440, and cases cited. As soon as the court was satisfied that such evidence had been withdrawn and was not properly in the record, it should have instructed the jury to that effect and not to consider it or the remarks of counsel in commenting thereon. It should have admonished counsel also not to comment further on the matter. As was said by this court in the case last cited, at page 441: ''It was the duty of the court, when objection was made by appellant's counsel, if not before, promptly and unequivocally to withdraw such statements from the jury

and instruct the jury to disregard the same, and require appellee's counsel to desist therefrom.''

In this case, the court, in giving its general instructions, attempted, by a qualified, uncertain and indefinite instruction, to remedy such misconduct, but, in following what has been said heretofore by this court in *Nelson* v. *Welch* (1888), 115 Ind. 270, 272, 16 N. E. 634, 17 N. E. 569: ''When the party who is injured by the wrong calls for the intervention of the court by an objection, it will not do for the court to remain silent * * *. The court is bound to interpose when so called upon, and if an improper or injurious statement has been made without excuse, the effect of it should be erased from the minds of the jury then and there, by an emphatic and explicit admonition from the court'', it seems clear to us that by refusing to sustain the objection of appellant when made and by failing to admonish the jury explicitly and emphatically that such evidence or the comments of counsel thereon should not be considered; and in failing to set aside the submission and discharge the panel, the court committed reversible error.

Other questions relative to the admissibility of certain items of evidence and to the instructions both given and refused are presented by the record, but as they may not arise on another trial, we do not deem it necessary further to extend this opinion. Judgment reversed, with instructions to grant appellant a new trial.

## CONCURRING OPINION.

MORRIS, J.—The petition for rehearing is correctly overruled, because of the misconduct of counsel for the State, but, in my opinion, the evidence of witnesses for appellee, given on a former hearing, was correctly admitted on the showing that at the time of the second trial, they resided outside of Indiana. *Reichers* v. *Dammeier* (1910), 45 Ind. App. 208, 90 N. E. 644; 5 Ency. Evidence 904; *Robertson* v.

*State* (1912), 63 Tex. Cr. Rep. 216, Ann. Cas. 1913 C 465, note; *McGovern* v. *Hays & Smith* (1902), 75 Vt. 104, and cases cited; *Atchison, etc., R. Co.* v. *Baker* (1913), 37 Okl. 48, 130 Pac. 577; *Emerson* v. *Burnett* (1898), 11 Colo. App. 86; 2 Wigmore, Evidence §§1401, 1402, 1404; *Edwards* v. *State* (1913), 9 Okl. Crim. Rep. 306, 44 L. R. A. (N. S.) 707; *Atchison, etc., R. Co.* v. *Osborn* (1902), 91 Am. St. 193, 195, note; *Spencer* v. *State* (1907), 13 Ann. Cas. 973, note; *State* v. *Nelson* (1904), 1 Ann. Cas. 471, note.

Cox, C. J., concurs in this conclusion.

NOTE.—Reported in 104 N. E. 765; 105 N. E. 898. As to the admissibility of testimony on preliminary examination of witnesses not available at time of trial, see 25 L. R. A. (N. S.) 868. As to the competency in criminal cases of the former testimony of an absent witness, see 1 Ann. Cas. 471; 13 Ann. Cas. 973; Ann. Cas. 1913 C 464. As to admissibility of evidence of deceased or absent witness given at a former trial, see 61 Am. St. 886. See, also, under (1) 25 Cyc. 85; (3) 17 Cyc. 539, 538; (4) 12 Cyc. 901; (6) 12 Cyc. 912.