STEARSMAN; PEAK; CARTER *v.* STATE OF INDIANA.

[No. 29,373. Filed June 7, 1957. Rehearing denied September 17, 1957.]

152

John G. Bunner, Marion J. Rice, Bert C. Cheatham and *Jack N. Van Stone,* all of Evansville, for appellants.

*Edwin K. Steers,* Attorney General, *Richard M. Givan,* and *Owen S. Boling,* Deputy Attorneys General, for appellee.

BOBBITT, J.—Appellants were charged by affidavit in two counts, with the crime of second degree burglary under Acts 1941, ch. 148, §4, p. 447, being §10-701(b), Burns' 1956 Replacement, and automobile banditry under Acts 1929, ch. 54, §3, p. 136, being §10-4710, Burns'

1956 Replacement, tried by jury, and found guilty on both counts as charged.

Appellants Stearsman and Carter were sentenced to the Indiana State Prison for a term of not less than two nor more than five years on Count 1 of the affidavit, and for a term of not less than ten years on Count 2 of the affidavit; and appellant Peak to the Indiana Reformatory for a period of not less than two nor more than five years on Count 1 of the affidavit, and for a period of not less than ten years on Count 2 of the affidavit.

Errors are assigned here as follows:

"1. That the trial court erred in overruling Appellants' motion for a new trial.

"2. That the trial court erred in overruling each Appellant's motion to quash both counts of the affidavit.

"3. That the trial court erred in overruling each Appellant's motion to suppress evidence."

We shall consider the alleged errors relied upon for reversal in the order in which they are discussed in appellants' brief.

*First:* Part I of appellants' argument pertains to specifications 9, 22, 25 and 29 of their motion for a new trial. Under these specifications it is asserted that the trial court erred in overruling appellants' motion for a mistrial because articles, including a wedge, claw hammer, two crowbars, an electric drill, two pairs of gloves and other items, were placed in view and on display before the jury, by the prosecuting attorney, who made no offer to introduce such articles into evidence. To support this contention appellants rely upon *Rohlfing* v. *State* (1952), 230 Ind. 236, 102 N. E. 2d 199, 102 N. E. 2d 763, and *Derry* v. *State* (1932), 204 Ind. 21, 182 N. E. 701.

In the Rohlfing Case a motion to suppress the articles which were displayed at the trial had been sustained, notwithstanding this the prosecuting attorney persisted in displaying such objects before the jury. They were first brought into the court room and placed within view of the jury when the court was giving the preliminary instructions. The attorney for the defendant immediately objected and moved for a mistrial. The court ordered the articles removed and instructed the jury not to consider what had just transpired in arriving at their decision. At the conclusion of the opening statement such articles were again brought into the court room and placed on a table in view of the jury. Defendant's attorney again objected and moved for a mistrial. The court again ordered the articles removed and admonished the jury to disregard them. As in the case at bar, the articles in the Rohlfing Case were not offered in evidence.

The case now before us is clearly distinguishable from the Rohlfing Case in that (1) no objection was made here by appellants' attorneys to the display of the articles involved until the beginning of the second day of the trial and then the objections, even by the most liberal construction, are addressed only to one wedge. No other objection is shown by the record until the close of the State's evidence; and (2) while it is asserted in appellants' motion for a mistrial that the wedge was the "subject of a motion to suppress in another proceedings and which motion to suppress was sustained," we have thoroughly searched the record and have found nothing to indicate that any motion to suppress was ever sustained. On the contrary, the record shows, and is undisputed, that appellants' motion to suppress evidence was, after a full hearing thereon, overruled.

In the Derry Case appellant objected to the display of the articles and requested the court to order their removal as soon as they were brought into the court and placed in view of the jury. However, the court permitted them to remain throughout the trial over the persistent objections of appellant, even though none of the articles were offered or introduced in evidence.

In the case at bar no objection to the display of any of the more than fifteen articles was made by appellants until the close of the State's evidence, with the exception of the wedge, which appellants inadvertently and apparently carelessly stated in their motion for a mistrial at the beginning of the second day of the trial, was the subject of a motion to suppress, which motion appellants allege "was sustained."

The trial court did not err in overruling appellants' motion for a mistrial at the beginning of the second day of the trial because (1) such wedge had not been suppressed in this case; and (2) no objection to the presence of the articles was made until the second day of the trial and no request for their removal was ever made by appellants or their attorneys.

By their failure to make timely objection to the display of such articles and request their removal from the view of the jury at the earliest opportunity, appellants waived any error which they might have asserted in this court. *Blanton* v. *State* (1954), 233 Ind. 51, 57, 115 N. E. 2d 122, 116 N. E. 2d 631, 632; *Randolph* v. *State* (1955), 234 Ind. 57, 122 N. E. 2d 860 (Cert. denied, 350 U. S. 889, 100 L. Ed. 783, 76 S. Ct. 145) ; *State ex rel. Johnson* v. *Reeves, Judge, etc. et al.* (1955), 234 Ind. 225, 230, 125 N. E. 2d 794.

Under the circumstances here there is no merit to appellants' assertion that the trial court erred in refusing to permit them to prove the locations of the

disputed articles in the court room and the fact they were in view of the jury and had been suppressed in another procéeding.

*Second:* Appellants' specifications 10 to 18, inclusive, of their motion for a new trial assert error in the admission of a written transcript of the testimony of Detective Sergeant Akeman, an officer in the Indianapolis Police Department, given at a hearing on the motion to suppress evidence. Sergeant Akeman was the officer in charge of the detailed police who arrested appellants and died of a heart attack while in the witness chair during the hearing on the motion to suppress and before appellants had completed their second recross-examination of the witness.

Two arguments are advanced in support of this contention.

"(a) That State's Exhibit No. 7 was incompetent in its entirety and its admission into evidence was prejudicial to the Appellants.

"(b) That those portions of State's Exhibit No. 7 which contained hearsay, conclusions and other incompetent evidence should have been excluded upon the objections made by the Appellants."

(a) It should be noted that the offer of the State to introduce such transcribed testimony (State's Exhibit No. 7) excepted that portion of the testimony where appellants' counsel had not completed the recross-examination. It also appears from the record that all of the testimony of Sergeant Akeman on the second recross-examination was, on motion of appellants, stricken from the record in the proceedings on the motion to surpress, hence there appears in State's Exhibit No. 7 only that testimony of the witness Akeman on which appellants had had a full opportunity to, and did, cross-examine.

Appellants objected to the introduction of State's Exhibit No. 7 for the following reasons:

"1. The defendants attorney had not completed his cross-examination of Gerald Akeman prior to his death;

"2. The issues of the trial in which Gerald Akeman appeared and the issues before this jury are different to the extent that hearsay evidence and other evidence was admitted into evidence properly so by the court for the purpose of determining whether or not there was probable cause. In the case at bar, the question before the jury is guilt or innocence of the defendants and for that reason the evidence of the previous hearing would not be competent in this particular trial and the introduction thereof would cause the jury to become biased and prejudiced against these defendants because of such evidence."

It appears from the State's offer to introduce Exhibit No. 7 that only that part of Sergeant Akeman's testimony on which appellants had had a full opportunity to cross-examine was introduced as evidence at the trial.

In *Wilson* v. *State* (1911), 175 Ind. 458, 465, 93 N. E. 609, this court said:

". . . it is well settled that in a criminal prosecution, under certain circumstances, the reproduction of the testimony of a witness upon a former hearing or trial of the same case, where the accused party either cross-examined such witness or was afforded an opportunity to do so, does not contravene the constitutional provision securing to the accused the right of confrontation." Citing authorities. See also: *Levi* v. *State* (1914), 182 Ind. 188, 192, 104 N. E. 765.

It is well settled in most jurisdictions that the testimony of a witness in a criminal case, which was taken

at a former trial or at a preliminary hearing, and whom the accused has had the opportunity to cross-examine, may be reproduced at a subsequent trial.[1] 15 A. L. R., Anno. III(a), pp. 515, 516, and cases there cited; 21 A. L. R., Anno. p. 662, and cases there cited; 79 A. L. R., Anno. III(a), p. 1397, and cases there cited; 122 A. L. R., Anno. III(a), p. 427, and cases there cited; 159 A. L. R., Anno. III(a), p. 1243, and cases there cited; See also: Wigmore on Evidence, Vol. V, §1387, p. 83, and Anno. and Comments, pp. 84-87.

The question of the admission of the testimony of the deceased witness Akeman, under the circumstances here, was a matter within the sound discretion of the trial court and only the abuse of such discretion can be reviewed by this court on appeal. *Wilson* v. *State, supra* (1911), 175 Ind. 458, 466, 93 N. E. 609; *Levi* v. *State, supra* (1914), 182 Ind. 188, 192, 104 N. E. 765.

A hearing on a motion to suppress the evidence is in the nature of a preliminary hearing and the rule on the reproduction of testimony in a subsequent trial of a witness who testified in a preliminary hearing and died prior to the trial, should, we believe, apply with equal force to the testimony of a deceased witness who testified in a hearing to suppress evidence.

(b) Specification 11 of the motion for a new trial is based on an alleged error of the trial court in

---

1. "In *United States* v. *Green* (1906), 146 Fed. 795, it was held that testimony given before a United States Commissioner in a proceeding for the return of prisoners from that judicial district to the district where the indictments were pending, and in which the question was whether there was probable cause of their guilt so that they ought to be removed to that district for trial, was admissible after the death of the witnesses at the trial upon the indictment."

15 A. L. R., Anno. III(a), p. 517.

overruling appellants' objection to the reproduction in evidence of the following question asked by the State of the witness Akeman:

"Q. How did you happen to know him?

"A. I will tell you, he had been pointed out to me as an individual that would bear watching by individuals that I believe who knew, from an informer."

The question as asked was not objectionable, and appellants made no objection thereto until after the answer had been given. Under these circumstances their remedy was a motion to strike out any objectionable part of the answer. Their objection to the question was, therefore, not timely made and raises no question on appeal. *Peachee* v. *State* (1939), 216 Ind. 42, 46, 22 N. E. 2d 979.

However, an examination of the record following the ruling of the court on the objection to this statement discloses that upon a renewal of the objections to such statement, the court not only sustained the objection but also instructed the jury to disregard the hearsay part of the statement.

Specification 12 alleges error in permitting the statement of Sergeant Akeman, that appellant Peak was under arrest at a time when he visited his home, to be read into evidence. Subsequent testimony disclosed that the arrest was for the crime committed in the case at bar. Appellant Peak could not possibly have been harmed by this testimony. The jury knew he was under arrest—he was on trial before them. There is no merit to this allegation.

Specification 15 asserts that it was error to permit the reading into evidence of the following question and answer:

> "Q. Had you seen or observed a firearm in the kitchen on your way to the basement?
> "A. I did."

Again, a reading of the record shows that subsequently the court reversed its first ruling and sustained the objection to reading into evidence of the above question and answer.

It is clear from the record that the trial court, upon objections by appellants, excluded the hearsay portions of the testimony as recited in State's Exhibit No. 7, thus permitting only that part of the testimony to be reproduced at the trial which could have been presented by the witness Akeman had he lived and testified at the trial.

The motion to suppress evidence was filed in the case at bar—the same case in which the testimony was reproduced and admitted—at the trial.

At the hearing on the motion to suppress defendants-appellants were confronted by the witness Akeman, and by their counsel availed themselves of the opportunity for full cross-examination. Under these circumstances their right to be confronted by the witness was not violated or abridged.

It is asserted that the issue was not the same at the hearing to suppress and in the trial. While the purpose of the particular proceedings may have been different, the guilt or innocence of appellants was the ultimate issue in both proceedings. The authorities cited by appellants in support of this contention, with the exception of *Levi* v. *State, supra* (1914), 182 Ind. 188, 104 N. E. 765, pertained to civil cases, and while applicable to the facts there stated lend no support to their position here.

Under the circumstances as shown by the record be-

fore us, the trial court did not err in permitting the testimony of Sergeant Akeman given at the hearing to suppress, to be reproduced at the trial.

*Third:* Appellants assert that the trial court erred in overruling each of their motions to quash both counts of the affidavit because there is no direct allegation of ownership (of the building) in either count of the affidavit.

Subsection (b) of §10-701, *supra,* provides, *inter alia,* "Whoever breaks and enters into . . . any building or structure other than a dwelling-house or place of human habitation, with the intent to commit a felony therein, shall be guilty of burglary in the second degree, . . . ."

It is alleged in the affidavit that appellants did unlawfully, feloniously and burglariously "break and *enter into a building, not a dwelling house or place of human habitation,* and in which the said George Stearsman, Benny Peak and Al Carter had no right to enter, said building *being occupied by the Housing Authority of the City of Evansville, Indiana,* a body politic organized under the laws of the State of Indiana, *as an office building for the Sweetser Homes Administration,* said building being located at 736 Cross Street, Evansville, Vanderburgh County, Indiana." (Our italics.)

An affidavit or indictment under this section (§10-701(b), *supra*) may allege the ownership of the property to be in the owner or in the tenant in possession. *Stokes, alias Coleman* v. *State* (1954), 233 Ind. 300, 303, 119 N. E. 2d 424.

Two reasons are advanced for the rule that ownership of the building entered must be alleged in the affidavit or indictment.

"First, that the ownership should be pleaded for the purpose of showing that the building broken

into was not the building of the accused or that the accused did not have the right to enter the building; and, second, that the ownership should be alleged for the purpose of so identifying the offense as to protect the accused against a subsequent prosecution for the same offense." *State* v. *Stokes* (1950), 228 Ind. 574, 575, 94 N. E. 2d 545.

The affidavit herein clearly shows that the Housing Authority of the City of Evansville was the tenant in possession of the building entered by appellants; that such building was not the property of the appellants herein, and that they had no right to enter. The allegation of ownership is such as to protect appellants against a subsequent prosecution for the same offense. This is sufficient to meet all the requirements of the statute. (§10-701(b), *supra*.) *Stokes, alias Coleman* v. *State, supra* (1954), 233 Ind. 300, 119 N. E. 2d 424.

*Fourth:* It is asserted that the trial court erred in overruling appellants' motion to suppress certain evidence secured at the home of appellant Peak at the time of the arrest. The sole question thus presented is whether or not Sergeant Akeman, who was in charge of the arresting squad and directed the arrest of appellants, had probable cause to believe that a felony had been committed, and that the appellants had committed such felony.

Constitutional mandates denounce only unreasonable search and seizure and do not preclude such as are incidental to a lawful arrest. Constitution of Indiana, Art. 1, §11. *People* v. *Hord* (1928), 329 Ill. 117, 160 N. E. 135; *People* v. *McGowan* (1953), 415 Ill. 375, 114 N. E. 2d 407; *Harris* v. *United States* (1947), 331 U. S. 145, 91 L. Ed. 1399, 67 S. Ct. 1098.

The arrest and search herein without a warrant was

legal if, at the time of the arrest, the arresting officers
had reasonable or probable cause for believing
that appellants had committed a felony. *Thomas*
v. *State* (1925), 196 Ind. 234, 146 N. E. 850; *Con-
nell* v. *State* (1939), 215 Ind. 318, 322, 19 N. E. 2d 267;
*Arthur* v. *State* (1949), 227 Ind. 493, 499, 86 N. E. 2d
698; *Sisk* v. *State* (1953), 232 Ind. 214, 225, 226, 110
N. E. 2d 627 (Cert. denied, 346 U. S. 838, 98 L. Ed. 360,
74 S. Ct. 60) ; *Havener* v. *State* (1955), 234 Ind. 148,
125 N. E. 2d 25, 27; *Snow* v. *State* (1955), 234 Ind. 234,
125 N. E. 2d 802, 804; Ewbanks Ind. Cr. Law, Symmes
Ed., Vol. I, §75, p. 30.

The evidence at the hearing on the motion to suppress
shows that George W. Ryan, an agent for the FBI, and
Sergeant Akeman were following appellant Carter on
the afternoon of February 5, 1954 when he met appel-
lants Peak and Stearsman. The three of them got into
Carter's car and drove north on Shelby Street in the
City of Indianapolis. Ryan followed them to the inter-
section of Troy and Harding Streets. Agent Ryan had
information that appellant Carter had committed a
federal offense—the interstate transportation of stolen
property. Later he again observed appellant Carter's
car and followed him to the Van Camp Hardware store
on West Maryland Street in Indianapolis where Carter
exchanged a "skilsaw." Agent Ryan examined the
exchanged saw after Carter had left the store and
discovered that the motor on the saw was hot and that
the catch guard beneath the saw contained a foreign
metallic substance. After examining the saw he then
telephoned Captain Jones of the Indianapolis Police
Department.

Agent Ryan then took the saw from the hardware
store to the Indianapolis Police Department laboratory
for examination. During this period of time he was

"in contact" with Sergeant Akeman, to whom he reported his findings relating to the skilsaw which appellant Carter had exchanged at the Van Camp Hardware store.

After taking the saw to police headquarters Agent Ryan then met other police officers of whom Sergeant Akeman was in charge, at a point in the vicinity of appellant Peak's home. After this meeting the police officers then left Agent Ryan and proceeded toward appellant Peak's home.

This evidence further discloses that Sergeant Akeman knew all the appellants "by sight," and that he had known appellant Peak for approximately two years; that at about 3:30 p.m. on February 4 he saw appellants Peak and Stearsman get into appellant Carter's automobile at Club 31 on Shelby Street. He followed them approximately six miles to Road 67 where they continued driving south.

Sergeant Akeman next saw appellant Carter's car at about noon on February 5 parked approximately three-fourths of a block from Peak's home. At approximately 1 p.m. Sergeant Akeman observed appellant Carter approaching the car carrying a cardboard box which he placed on the right side of the seat, then got in on the left side of the car and drove away. The witness followed Carter to the Ratcliff Hardware Store on Road 67 where he overheard Mr. Ratcliff tell Carter to "take the saw back where he got it and he could probably get some blades there also." Carter then left the store and drove back towards Indianapolis.

Sergeant Akeman last saw appellant Carter's automobile unoccupied and parked at approximately the same place as before on Shelby Street at about 2:30 p.m. on February 5, 1954.

The evidence at the hearing on the motion to suppress further shows that immediately prior to entering the home of appellant Peak for the purpose of making the arrest Sergeant Akeman had information on which he proceeded to arrest appellants for second degree burglary, and at the time he received such information he was informed that three teams of detectives were on the way to help him "effect the arrest."

When the officers arrived at the place where they were to meet Sergeant Akeman they proceeded to the house of appellant Peak. About twenty minutes before the officers arrived at the house of appellant Peak, Sergeant Akeman had heard a buzzing noise, as though a saw were cutting metal, coming from Peak's basement.

Upon arrival at the house Sergeant Akeman sent two officers to the rear door of the house and he and two others went to the front door where they rang the doorbell and Mrs. Peak came to the door. Sergeant Akeman then asked her if "Benny was home, if he was in the basement, and what he was doing there." The four officers then entered the house and proceeded through the house to the back porch where they entered the open basement door. When they reached the basement they found appellant Peak "standing over a metal box 12 inches wide, 12 inches high and 12 inches thick" with an electric saw in his hand. They immediately placed appellants under arrest telling them that they were being arrested for second degree burglary.

After appellants were arrested and handcuffed, a saw, a safe, the metal box above described, and other tools were seized and taken to police headquarters.

Appellant Carter had been under surveillance from about noon on the day of the arrest.

Sergeant Akeman also testified that he entered Peak's house for the purpose of arresting the three appellants herein for the crime of second degree burglary; and that he had a sufficient number of men with him "to guard the house to keep a flight from taking place."

We believe this evidence on the hearing to suppress is sufficient to sustain a finding by the trial court that Sergeant Akeman and the officers under his direction entered the home of appellant Peak for the purpose of arresting appellants for the commission of a felony and not for the purpose of searching the house, and that at the time they entered the house they had probable cause to believe that appellants had committed a felony.

The entire factual situation as revealed by the evidence at the hearing on the motion to suppress indicates, we think, without successful contradiction, that the sole and only purpose of Sergeant Akeman and the other officers in entering the house of appellant Peak was to arrest appellants for the commission of a felony which they had probable cause for believing had been committed by appellants, and that the evidence which was obtained as the result of the entrance of appellant Peak's house was incidental to such arrest. Under these circumstances, the articles which appellants sought to suppress were legally seized and there was no violation of appellants' rights against unlawful search and seizure.[2] *Snow* v. *State, supra* (1955), 234 Ind. 234, 125 N. E. 2d 802, 804; *Campbell* v. *State* (1926), 198 Ind. 231, 234, 153 N. E. 397. See

---

2. Since the house entered was neither in possession of, nor owned, by appellants Stearsman and Carter their constitutional rights against unlawful search and seizure could not have been violated.

*May* v. *State* (1953), 232 Ind. 523, 527, 112 N. E. 2d 439.

also: *Henderson* v. *State* (1956), 235 Ind. 132, 131 N. E. 2d 326.

Appellants further assert that it was approximately six hours after appellants' arrest when the Indianapolis police learned that a burglary had been committed in the city of Evansville. This is not disputed and is admitted by Sergeant Akeman.

In support of this assertion appellants quote from *Pearman* v. *State* (1954), 233 Ind. 111, 113, 117 N. E. 2d 362, as follows:

> ". . . the sheriff was authorized to arrest without a warrant if he had reasonable cause to believe the felony had been committed and that appellant was guilty of the offense."

This rule is not applicable to the purpose for which appellants have attempted to apply it. The phrase "guilty of the offense" is included in the "reasonable cause" i.e., the arresting officer must not only have reasonable cause to believe that a felony had been committed, but he must also have reasonable cause to believe that the person arrested was guilty of the commission of *such* felony.

Appellants appear to contend that since the arresting officer did not know of the burglary which had been committed in Evansville, Indiana, at the time of the arrest, they could not have had reasonable cause to believe then that the appellants were guilty of the burglary for which they were convicted. In our opinion the above quotation from the Pearman Case is not subject to any such construction.

It has long been the settled rule in Indiana that evidence obtained incidental to an arrest upon reasonable cause to believe that the person arrested has committed a felony, not necessarily the one for which such person

might eventually be tried and convicted, is admissible in the trial for an offense other than that for which the arrest is made. *Haverstick* v. *State* (1925), 196 Ind. 145, 150, 147 N. E. 625; *Smith* v. *State* (1939), 215 Ind. 629, 634, 21 N. E. 2d 709; *Rucker* v. *State* (1948), 225 Ind. 636, 639, 77 N. E. 2d 355; *Arthur* v. *State, supra* (1949), 227 Ind. 493, 499, 86 N. E. 2d 698. Hence, the evidence obtained as an incident to the arrest of appellants, even though the probable cause for their arrest was the belief that another felony had been committed, was admissible on their trial for the commission of another felony—the burglary in Evansville, Indiana.

The burden is on appellants to sustain their assertions of error. This they have failed to do. Hence, the judgment of the trial court must be affirmed.

Judgment affirmed.

Arterburn, C. J., Emmert, Landis and Achor, JJ., concur.

NOTE.—Reported in 143 N. E. 2d 81.