WILLIAM RUBEN RAINES *v.* STATE OF INDIANA.

[No. 969S215. Filed May 13, 1971. Rehearing denied August 3, 1971.]

*Jerome E. Levendoski, Kenneth M. Waterman,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Lon D. Showley,* Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was charged by indictment with the crime of a second degree murder. Trial by jury resulted in a finding of guilty. Appellant was sentenced to the Indiana State Prison for life. Previously a trial by jury resulted in a verdict of guilty as charged, from which the appellant appealed to this Court. This Court in an opinion rendered October 15, 1968, reversed that decision and ordered a new trial. See *Raines* v. *State* (1968), 251 Ind. 248, 240 N. E. 2d 819, 15 Ind. Dec. 484.

The record in this case discloses the following facts:

On the afternoon of June 18, 1966, the decedent, Earl Shanks, and the appellant, William Ruben Raines, were assigned the same room in the Volunteers of America Home at 840 Hayden Street, Fort Wayne, Indiana. At the time the two men went to their room the houseman noted they were "a little inebriated." About 7:00 o'clock the houseman, Wilbur Hayworth, saw the decedent come downstairs to the restroom and return to the room upstairs. About 9:00 o'clock the same evening Hayworth observed the appellant standing in the hall

by the restroom door and noticed an object lying on the floor. He asked the appellant what the object was, to which he replied, "That's nothing but a sheet". This object turned out to be a bloodstained sheet which came from the decedent's room. The appellant then inquired where he could find a good spot in town for some entertainment and asked Hayworth to call a cab for him. Hayworth testified that the cab picked the appellant up at about 9:40 to 9:45.

At 8:00 o'clock the next morning while making his rounds, Hayworth found the deceased lying in his bed on a blood soaked mattress. The Deputy Coroner, Dr. Stanley Swinton, determined at 9:00 A.M. that the deceased had been dead about twelve hours, and that he had died from a wound in his neck which had severed the carotid artery. Hayworth further testified he found a paring knife on the ground outside the bathroom window, and that there was a small hole in the screen in the window. He further testified he found a pair of men's shorts on the floor of the shower in the bathroom. Both the shorts and the paring knife were tested, and it was discovered they were stained with human blood.

When the appellant was taken into custody, he had bloodstains on his ankle, which he stated came from a sore; however, there were no sores on his body. This blood was also tested and found to be human blood. Also, on the morning following the death of the decedent the appellant was first seen wearing a pair of unmatched shoes, one of which was determined to be his own and the other that of the decedent, which shoes he attempted to hide. Upon examination it was determined these shoes were spotted with human blood. There were also blood stains upon appellant's trousers, shirt and one of his socks.

Appellant first claims reversible error in that the trial court admitted into evidence the testimony of Dr. Stanley Swinton as contained in the transcript of the former trial of this cause. As a foundation for the introduction of this transcript of testimony, the State established

that Dr. Swinton was in Ft. Lauderdale, Florida; that he was unavailable to testify in the case at bar; that among other reasons for his absence, he was under a subpoena by a Florida criminal court to testify in a pending case there; that the State had diligently attempted to obtain Dr. Swinton's personal attendance at the trial, but that there was no procedure available to compel his attendance under the circumstances. Appellant cites the case of *Levi* v. *State* (1914), 182 Ind. 188, 104 N. E. 765, 105 N. E. 898, in support of his position that the State did not lay sufficient grounds to warrant the introduction of the transcribed evidence. However, in the *Levi* case this Court acknowledged the existence of authority that where the transcript of evidence which the State seeks to introduce was taken at a former trial where the defendant had been afforded an opportunity to confront and cross-examine the witness, the evidence is admissible where the witness is permanently or indefinitely absent from the state and beyond the jurisdiction of the court in which the case is pending, and that this evidence is acceptable especially if it is necessary to prevent a miscarriage of justice, which question is directed to the sound discretion of the trial court.

The Court then pointed out in the *Levi* case that the facts there did not bring it within these exceptions; that there had been no showing that the State could not obtain the attendance of the witnesses nor had they given any reason why they could not take the depositions of the absent witnesses, the defendant in that case having consented to the use of depositions on the part of the State. We do not find these conditions in the case at bar. Here there had been no consent by the defendant to take the deposition of Dr. Swinton, and there is ample evidence from which the court could have determined that the State was not able to force the attendance of the doctor at the trial.

We would further point out that the testimony of Dr. Swinton went entirely to the cause of death of the decedent and had no direct bearing on any evidence connecting the

appellant with the crime. Under these circumstances we hold the trial judge correctly exercised his discretion in admitting the testimony of Dr. Swinton taken at the previous trial to prevent a miscarriage of justice.

The appellant next alleges the trial court erred in permitting testimony of police officers regarding statements made by the appellant. It is appellant's position that the admission of this evidence violated the rule of law laid down in *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. The first conversations had between the police officers and the appellant were had at a time before the appellant was a prime suspect and before he was ever placed under arrest or taken into custody. It was not necessary for the police officers to give the warnings required in *Miranda* at that time. *Schmidt* v. *State* (1970), 256 Ind. 218, 265 N. E. 2d 219, 24 Ind. Dec. 164.

Although the appellant claims that at the time he was actually taken into custody, he was not given the full *"Miranda"* warnings, the testimony of the police officers at the trial was to the contrary. This Court will not weigh that evidence, but will affirm the trial judge if there is evidence to support the findings. *Schmidt* v. *State, supra.* We hold there was sufficient evidence before the trial court to support a finding that the appellant had in fact been adequately informed of his constitutional rights at the time he was taken into custody.

Appellant next claims there was insufficient evidence to establish the crime of second degree murder. From the foregoing facts the jury was justified in finding that the decedent had been killed by a stab wound in the neck inflicted by another person. In addition, there was evidence before them that the appellant had been with the decedent at the approximate time of his death. That he had human bloodstains on his person and on his clothing; that a knife which was stained with human blood was found outside a bathroom window where appellant had been seen at the

approximate time of the death of the decedent. This evidence, although circumstantial, is sufficient to prove the essential elements of the crime charged. *Manlove* v. *State* (1968), 250 Ind. 70, 232 N. E. 2d 874, 12 Ind. Dec. 494; *Hardesty* v. *State* (1967), 249 Ind. 518, 231 N. E. 510, 12 Ind. Dec. 184.

Appellant also contends there was no malice established since there was no proof that the knife found was used to kill the decedent, and in fact there was no evidence as to what kind of instrument was used to kill the decedent; therefore, the general rule that the use of a deadly weapon implies malice cannot be applied in this case. With this we do not agree. There was ample evidence, though circumstantial, that the knife was the weapon used. From this a malicious intent of the appellant could be found by the jury. *Jones* v. *State* (1970), 253 Ind. 456, 255 N. E. 2d 105, 20 Ind. Dec. 219.

The trial court is affirmed.

Arterburn, C.J., DeBruler and Hunter, JJ., concur; Prentice, J., not participating.

NOTE.—Reported in 269 N. E. 2d 378.