**Robert L. MOORE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 282S54.**

Supreme Court of Indiana.

Oct. 20, 1982.

James R. Bielefeld, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was charged with the crimes of Rape and Robbery. A third count was filed seeking enhancement of any sentence imposed under the habitual offender statute upon conviction of either one of the other two counts. A jury found appellant guilty of the crime of rape and also found him to be an habitual offender. He was sentenced to fifty (50) years on the rape conviction. That sentence was enhanced by another thirty (30) years under the habitual offender statute.

The record reflects appellant's first trial for the instant offense resulted in a mistrial being declared for reasons not relevant to the disposition of this appeal. We do not need to summarize the factual events in this case, save one, as we find reversible error has been committed and this cause must be remanded to the trial court for a new trial.

The second trial in this case commenced on July 13, 1981. However, on July 6, 1981, the prosecutrix in the case, one Debra Davis, was found dead in the basement of her home in Gary with a gunshot wound in the chest. A death certificate completed by a Lake County deputy coroner indicated the cause of death was "[l]aceration of left common carotid artery [d]ue to bullet wound to the chest." On another part of the form it was indicated an investigation into the cause of death was pending. However, there was a note found next to Mrs. Davis' body clearly implying she had committed suicide due to overwhelming despondency with the general turn of events in her life. There was no reference in the death certificate to the note. There was also no reference in the note to the rape or the upcoming trial.

Upon discovery of the death of the prosecutrix, the State made an oral Motion in Limine on the first day of trial to prohibit the appellant from making any reference to the fact of Mrs. Davis' death during voir dire of the jury. The court granted this motion.

At trial the State moved to admit the death certificate into evidence. The judge indicated he was allowing the certificate to be admitted "in order to establish a predicate for using the previous testimony of [Mrs. Davis]; " in other words, the document was admitted to invoke the use of the prior recorded testimony exception to the hearsay rule. Also, prior to this reading of the transcript of the first trial wherein Mrs. Davis had been subjected to direct and cross-examination, the trial judge told the jury he was using this method of admitting the evidence because the witness was deceased and was "certainly" unavailable. Appellant did not object to the admission of the death certificate into evidence.

When the State had concluded its presentation of the evidence, the court held a hearing relative to appellant's argument that the evidence tending to show Mrs. Davis' death was a suicide should be admitted. The court treated the hearing as one on a renewal of the State's Motion in Limine to have all evidence of suicide excluded. Appellant made an offer of proof, in which he proposed to offer the note itself, the testimony of the deputy coroner who found the note when he investigated the incident, and the testimony of Mrs. Davis' husband, for the purpose of authenticating the handwriting as hers. The State argued in opposition the evidence of suicide was irrelevant to the issue of whether or not appellant had committed the crime. The court accepted the State's reasoning and held no evidence of the suicide could be admitted.

 This Court has long recognized prior recorded testimony is an exception to the hearsay rule. Evidence consisting of a now unavailable witness' recorded testimony given at a prior judicial proceeding, where there was sufficient identity of issues with those of the present proceeding and the adverse party had a chance to cross-examine the now unavailable witness, is admissible as evidence in the subsequent

proceeding. *Raines v. State,* (1971) 256 Ind. 404, 269 N.E.2d 378; *Stearsman v. State,* (1957) 237 Ind. 149, 143 N.E.2d 81; *Levi v. State,* (1914) 182 Ind. 188, 104 N.E. 765. The unavailability of the witness may be due to "death or insanity of the former witness, the absolute impossibility of securing his presence, his absence by procurement of the defendant, or such non-residence as will preclude the taking of his deposition . . . ." *Levi, supra,* at 192, 104 N.E. at 767. Certainly the proper foundation was laid by the State in this case when it offered the death certificate of Mrs. Davis to show her unavailability and further show the other foundational requirements were met.

█ However, we find no authority for the proposition the jury need be informed of the reason for the absence of the witness and for invocation of the rule. As made clear in the cases and authorities cited above, whether or not to invoke the rule is a decision committed to the sound discretion of the trial court. There is no need to inform the jury of any of the factors relating to the witness' absence. The trial court erred in allowing the jury to view the death certificate. It would have erred even if it had done no more than to inform the jury the witness was unavailable because she was dead.

In the case at bar, the effect of the jury's viewing of the death certificate coupled with their awareness of the timing of the death, undeniably left them free to infer appellant had arranged for, or himself committed the murder of Mrs. Davis to prevent her from testifying against him. It is also obvious the evidence strongly supporting the theory she had committed suicide would have done much to foreclose the drawing of the inference.

█ We conclude the trial court's refusal to allow the admission of any evidence tending to show the witness' death was a suicide, coupled with the admission of evidence strongly suggesting she was murdered, was a deprivation of appellant's right to a fair trial as guaranteed him by the Sixth and Fourteenth Amendments to the Constitution of the United States and Article 1 § 12 of the Constitution of the State of Indiana. Moreover, we deem this error to be "fundamental error." We have stated: "To be categorized as fundamental error and thus to transcend our procedural requirements, the error must be blatant, and the potential for harm must be substantial and appear clearly and prospectively." *Nelson v. State,* (1980) Ind., 409 N.E.2d 637, 638. We have no difficulty in finding the error was indeed blatant and is offensive to our fundamental notions of the proper administration of the criminal justice system. This is significant because appellant never objected to the admission of the death certificate into evidence. Neither at trial nor in his brief does he object to the court's ruling regarding admission of the evidence of suicide on the same grounds as we have identified require a reversal in this case. However, we do not require adherence to the contemporaneous objection rule or to Ind.R.App.P. 8.3(A)(7) in the case of fundamental error. *Crosson v. State,* (1980) Ind., 410 N.E.2d 1194; *Nelson, supra; Johnson v. State,* (1979) Ind., 390 N.E.2d 1005; *Dodson v. State,* (1978) 269 Ind. 380, 381 N.E.2d 90; *Young v. State,* (1967) 249 Ind. 286, 231 N.E.2d 797.

█ We endeavor to make it clear we are not holding that, when the prior recorded testimony exception to the hearsay rule is invoked, it is error to admit any evidence showing why the witness is not available. As we have noted, it has been a long-standing rule of law that evidence the accused has attempted to conceal or suppress implicating evidence is admissible as evidence the accused committed the instant offense. Such act of the accused might include attempts to bribe, intimidate, threaten, or even murder an adverse witness between the first and second proceeding, resulting in his absence from the second proceeding. *Barnes v. State,* (1980) Ind., 403 N.E.2d 331; *Washington v. State,* (1980) Ind., 402 N.E.2d 1244; *Matthew v. State,* (1975) 263 Ind. 672, 337 N.E.2d 821; *Elliot v. State,* (1972) 258 Ind. 92, 279 N.E.2d 207. Thus, when the absence of the witness whose

testimony is being admitted through the prior recorded testimony exception is due to the procurement or connivance of the accused, it is proper to admit evidence of the accused's act. However, when this occurs, of course, the accused has the right to put on exculpatory evidence tending to show he is not responsible for the witness' absence.

*Balfour and Clay v. State*, (1981) Ind., 427 N.E.2d 1091 is cited by the State in support of its argument the judge did not abuse his discretion in denying admission of the suicide evidence. However, that case is distinguishable from the case at bar. In *Balfour*, we held the trial judge did not abuse his discretion in refusing to admit evidence regarding the details of the shooting of a brother of a State's witness on the grounds such evidence was irrelevant to the issue of whether or not the instant offense was committed. However, in the case at bar, it was the State's witness who was shot. All evidence regarding that shooting was clearly relevant, when evidence in the form of the death certificate had already been admitted and led to a reasonable inference the defendant had murdered the witness to keep her from testifying.

Since the underlying felony conviction is reversed, of course the thirty (30) year enhancement of the sentence under the habitual offender statute cannot stand.

The judgment of the trial court is reversed. The cause is remanded to the trial court for a new trial.

HUNTER, PRENTICE and PIVARNIK, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

The prosecuting witness died of a gunshot to the chest a week before the retrial of this rape case. The retrial resulted in the conviction on appeal. This retrial and the death of the prosecuting witness occurred two years after the first trial at which her testimony was first taken, subjected to cross-examination and recorded. A written note signed with her name was found near her body which would indicate that she was going to take her own life because she was despondent over her life. Nothing in the note refers to her prior victimization by appellant or to the oncoming retrial.

Before trial, in the course of open and detailed discussions regarding the manner in which the trial should proceed in light of the recent death of the prosecuting witness, the question of the proper manner of handling the death certificate arose. The trial prosecutor stated that the death certificate might not be admissible as evidence for the trier of fact, but only for the judge in determining the admissibility of her prior recorded testimony. The defense lawyer stated that he intended to introduce the suicide note and testimony of a deputy coroner to support the inference that the prior recorded testimony of the prosecuting witness was not worthy of belief because it reflected that she may have suffered from guilt feelings for having given false or exaggerated testimony or from an unsettled mental condition.

Two possible legal avenues existed for the introduction of the suicide note and coroner's information by the defense. The first avenue was that this evidence was admissible as directly and independently relevant to show bias or lack of trustworthiness of the witness. The second avenue was that it was admissible to dispel the prejudicial and adverse inferences stemming from written statements on the death certificate. Defense counsel was acutely aware of the potential which the introduction of the death certificate before the jury had for creating prejudicial inferences adverse to his interests. Defense counsel was unable to convince the judge that his evidence was independently relevant and that the first avenue be followed. I would agree. The passage of time between the taking of the prior testimony and the death, and the absence of any implication that she was despondent over matters related to her victimization by appellant or having to face a retrial, render the time connection of the death and the retrial severely attenuated.

Without much doubt, in light of the strength of the prosecution's case, any error in refusing to permit its introduction on this basis would be harmless.

Having been unsuccessful in convincing the trial judge that the evidence was directly relevant, the record would show that defense counsel sought consciously to use the second avenue. In execution of this strategy, he consciously and deliberately chose not to object to the proffer of the death certificate by the prosecution. He did not object to its introduction; he did not seek redaction of offensive parts in it; and he did not seek to have the jury instructed as to the limited purpose of its introduction. The exhibit would have been excluded from consideration by the jury in the form in which it was offered if it had been properly objected to. I believe the record is clear in its relevation that defense counsel chose, as a matter of trial strategy, to take a calculated risk, in the hopes of convincing the judge that his evidence of suicide would be admitted to refute the prejudicial inference which might flow from it that appellant had something to do with the violent death of the witness. He was unsuccessful in this strategy. That is not to say that there was anything inappropriately done by counsel.

There are basically two legal reasons for concluding that the trial judge did not commit reversible error in excluding the evidence of suicide for this purpose. The first is that under the circumstances present here it is speculative in the extreme to conclude that the jury entertained the unwarranted inference that appellant had anything to do with the witness's death, and that if it did entertain the inference, it would permit such inference to effect the decision reached. The certificate itself bears the information that the death occurred a week before trial as a result of a gunshot wound to the chest and that a homicide investigation was pending. That is an insubstantial basis upon which to deduce appellant's involvement. Secondly, as fate would have it, one of the defense witnesses was shot and killed two months before the retrial and the deposition of this witness was read into evidence before the jury as well—an event of the same character. And thirdly, the trial judge ordered in the course of the trial that no comments be made by counsel on the death of the witness beyond the fact that she was dead. In this manner, exploitation of the potential of the written certificate of death to create inferences prejudicial to the defendant was prevented.

There is a second legal ground for upholding the trial judge's ruling. Ordinarily, when one party presents part of a statement or transaction, his opponent should be permitted to present the balance thereof for the purpose of dispelling any adverse inferences. *Durst v. State*, (1920) 190 Ind. 133, 128 N.E. 920; *Carroll v. State*, (1975) 263 Ind. 696, 338 N.E.2d 264. This rule is often referred to as the completeness, wholeness or open the door doctrine. The extent to which the opponent should be permitted to go into the transaction calls for a discretionary ruling by the governing trial judge. Such a ruling requires considerations of fairness. The trial court's ruling excluding defense counsel's evidence was within reason. The state of the witness's mind at the time of her death was extraneous to the issues on trial, and fairness considerations were minimal in light of defense counsel's deliberate choice to permit the objectionable evidence to go in. There was no reversible error in the trial rulings upon the evidence and the conviction should be affirmed.