CHARLES L. MATTHEW *v*. STATE OF INDIANA.

[No. 1275S356. Filed December 4, 1975.]

*John M. Lyons,* of Valparaiso, for appellant.

*Theodore L. Sendak,* Attorney General, *John H. Meyers,* Deputy Attorney General, for appellee.

ARTERBURN, J.—This case comes to this Court on Petition to Transfer from the Court of Appeals. Oral argument was heard on Tuesday, October 13, 1975. We grant transfer and vacate the judgment of the Court of Appeals. The judgment of the trial court below is affirmed.

The Appellant stands convicted of reckless homicide while driving under the influence of intoxicating liquor, Ind. Code § 9-4-1-54 (b) (1) (Burns 1973). The Appellant was previously convicted of both reckless homicide and reckless homicide while driving under the influence of intoxicating liquor. This previous conviction was reversed by the Court of Appeals on the basis of insufficient evidence in *Matthew* v. *State,* (1972) Ind. App., 289 N.E.2d 336. The Appellant was tried a second time. The first charge of reckless homicide was dismissed by the trial court. The conviction of the Appellant on the second charge was reversed by the Court of Appeals because of the admission into evidence of certain portions of grand jury testimony by the Appellant. *Matthew* v. *State,* (1974) Ind. App., 318 N.E.2d 594. In reversing the Court of Appeals and affirming the Appellant's conviction, we look at both the sufficiency of the evidence and the admission into evidence of the grand jury testimony.

## I.

It is well-established that this court, in determining the sufficiency of evidence, does not judge the credibility of witnesses nor weigh evidence. We look at only the evidence most favorable to the State and the reasonable inferences to be drawn from that evidence. A verdict will not be disturbed if there is substantial evidence

of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Young* v. *State*, (1975) Ind., 332 N.E.2d 103; *Blackburn* v. *State*, (1973) 260 Ind. 5, 291 N.E.2d 686; *Jackson* v. *State*, (1971) 257 Ind. 477, 275 N.E.2d 538.

The evidence most favorable to the State reveals the following:

Donald Risner, bartender at the Bass Lake Country Club, testified that he was working on the afternoon of Wednesday, July 29, 1970. The Appellant arrived at the country club around 2:00 p.m., presumably to pick up his wife, who worked there until 2:30 p.m. The Appellant remained there about two hours and was served two or three vodka martinis. The Appellant and his wife then left.

Orville Brodie, bartender at the Shoreroom, testified that the Appellant and his wife arrived there between 5:00 and 6:00 p.m. The Appellant had one or two highballs, each containing one ounce of whiskey. The Appellant and his wife stayed about forty-five minutes.

Indiana State Trooper Howard Bashore testified that he responded to a call to investigate an accident at the junction of County Road 25 North and County Road 700 East. The people involved in the accident had already been taken away by ambulance when he arrived. Investigation of the scene of the accident revealed that the Matthew automobile contained two unopened bottles and three unopened cans of beer in the rear seat. The cans, two of them attached in a six-pack container, were cool and damp. Under the front seat was a dry drinking glass. On the floor of the front seat on the passenger side was a styrofoam cup which was wet and smelled of alcohol.

Officer Bashore talked to the Appellant at the hospital about three hours later. The smell of alcohol was on the Appellant's breath.

Ronald St. Martin, an attorney who had known the Appellant for several years, testified that he saw the Appellant in the Shoreroom. From the Appellant's tone of voice and general appearance St. Martin was of the opinion that the Appellant was at that time under the influence of alcohol.

Testimony of Alberta Olson, daughter of the deceased Bertha Olson, was read to the jury from the transcript of the Appellant's first trial. In the early evening of July 29, 1970, Alberta Olson and her mother went for a drive. At about 8:00 p.m. they were involved in an accident. They were proceeding west on County Road 25 North and their lane of traffic was not controlled by a traffic signal. The Matthew car was traveling north on County Road 700 East. A stop sign regulates that flow of traffic across Road 25 North. Alberta Olson testified that she saw the Matthew car approaching but thought it would stop. The impact of the collision caused the Olson car to spin several times before coming to a stop. There was still daylight when the accident occurred.

Steven Fry, an ambulance attendant called to the scene of the accident, testified that he could smell alcohol on the Appellant's breath. This testimony, the only direct evidence of the condition of the Appellant at the time of the accident, reads in part as follows:

"Q. My question is, 'did you arrive at an opinion?'
A. Yes, I did.
Q. O.K. Tell us what that opinion is.
A  I believe at the time that the man had been drinking.
Q. All right. Did you at that time form any opinion as to whether or not he was under the influence?
A. Uh, I believe I just answered that, didn't I? I stated that I believe he had been drinking.

\* \* \*

[cross examination]

Q. Mr. Fry, when you talked to Mr. Wallsmith a few days ago, isn't it true that you told him that in your opinion

Chuck Matthews was under the influence of intoxicating liquor, but you couldn't prove it?

A. My personal opinion, yes."

This evidence is sufficient to support the Appellant's conviction. The Appellant urges us to consider Fry's testimony together with the testimony he gave at the Appellant's first trial. It is suggested that by doing so we will see that Fry did not mean "under the influence" when he said that in his opinion the Appellant was under the influence of intoxicating liquor. To do this is not only to weigh evidence, but is to weigh evidence not in the record before this court. We can do neither.

## II.

The second question for consideration here is whether the trial court erred in permitting the introduction of the evidence of certain grand jury testimony. The evidence objected to was a portion of Appellant's voluntary statement to the grand jury which had investigated the cause of death at issue, and the testimony of Donna Rogers, a former employee of the Appellant. The record reveals that the Appellant voluntarily went before the grand jury to testify regarding his actions at the time of the accident. He testified that at the time the collision occurred he had just left the Shoreroom cocktail lounge where he had two drinks. He also testified that immediately before that he and his wife had been at the home of his secretary, Donna Rogers, where he had had dinner and had not consumed any alcohol.

After the introduction of this transcript, Donna Rogers took the stand on the behalf of the State and testified that she had supported the Appellant in such testimony before the grand jury, namely that he had dinner at her home on the evening in question. She then testified that in fact this was not true. She further stated that after she had lied to the grand jury she reconsidered the matter and decided she should be back and tell the truth. She stated she had attempted to

persuade the Appellant to go back and change his testimony to the truth. He refused and reminded her that she was divorced and had children to support.

Objection was made to this testimony on the ground that it was impeaching only. With this we do not agree. Evidence of efforts to manufacture or suppress evidence is competent as a circumstance against a defendant. *Perfect* v. *State*, (1923) 197 Ind. 401, 141 N.E. 52. "Where a person is accused of crime, a guilty consciousness may be inferred from attempted evasion, palpable falsehood, equivocation, or from suppression of facts, and a presumption of guilt is said to arise from the falsification of testimony by the accused." 22A C.J.S. *Criminal Law* § 596 at 375-376 (1961). Where one voluntarily goes before a grand jury to testify in an attempt to cover up by false testimony evidence of guilt, such testimony becomes material as evidence of a consciousness of guilt the same as flight and other such acts.

"No useful purpose would here be served in undertaking to make further classification of the innumerable instances of conduct, both verbal and non-verbal, of a party indicating a consciousness of guilt. The common experience of mankind in dealing with the ordinary affairs of life should offer, it would seem, an indispensable test in making the determination as to whether or not the particular conduct encountered is calculated to raise the inference of a consciousness of guilt." 2 *Wigmore on Evidence* § 278 at 53 (Supp. 1975).

The Appellant voluntarily appeared before the grand jury and deliberately lied. He conspired with his employee in this perjury. When the latter indicated, after the Appellant's first trial, that she had second thoughts and desired to tell the truth, she was reminded that she was divorced and had children to support. The "common experience of mankind" can only conclude that this was a cover-up and raised an inference of a consciousness of guilt. The trial court did not err in admitting this testimony into evidence.

678

Transfer of this cause is ordered, the judgment of the Court of Appeals below is vacated and Appellant's conviction is affirmed.

All Justices concur.

NOTE.—Reported at 338 N.E.2d 821.