Charles GRIMES, Jr., Appellant,

v.

STATE of Indiana, Appellee..

No. 1280S444.

Supreme Court of Indiana.

July 6, 1983.

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Stephan E. Wolter, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Charles Grimes, Jr., was found guilty of murder by a jury in the Jay Circuit Court on May 16, 1980. The trial judge subsequently sentenced Appellant to forty years imprisonment. Appellant now directly appeals and raises the following fifteen issues:

1. admissibility of certain photographs of the victim's dead body;

2. admissibility of certain photographs of the room in which said body was found;

3. denial of Appellant's motion for change of venue and for individual *voir dire* of the jury;

4. admissibility of testimony that photographs of Appellant were found in the victim's trailer home;

5. admissibility of the victim's driver's license and billfold found in said trailer;

6. admissibility of a rubber glove found on the victim's body;

7. admissibility of testimony that there were no other reports of crimes in the area of the instant murder on the day of said murder;

8. propriety of Kenneth Joy as an expert witness;

9. admissibility of evidence of previous consentual sexual encounters between Appellant and the victim;

10. admissibility of testimony about Appellant's statements concerning his activities on the day and evening of the murder;

11. admissibility of Clay Aker's testimony about Steven Loy's statement to him in Appellant's presence;

12. admissibility of Mary Joann Hall's testimony about Steven Loy's statement in Appellant's presence;

13. sufficiency of the evidence;

14. admissibility of certain diagrams used by the prosecutor in his final argument; and

15. whether the trial court erred by refusing to allow Appellant's immediate family to remain in the courtroom as an exception to Appellant's motion to separate witnesses.

At approximately 3:40 a.m. on September 6, 1979, Bruce W. Lykins was found dead in his trailer home at the Oakwood Trailer Park in Portland, Indiana. The Portland Fire Department had been called because Lykins' trailer home was on fire. A Deputy State Fire Marshall estimated that said Department arrived more than twenty minutes but less than one hour after the fire began. It subsequently was determined that the fire originated in Lykins' kitchen where some cushions had been placed on the range and the burners turned on. Lykins' body was found nude, face-down and "spread-eagled" on his bed with each limb bound to a different bedpost. The body was covered with a four to six inch deep layer of burned clothing and other debris; there was a wound on the back of the skull and a coat hanger wrapped tightly around the neck. An open jar of vaseline was found on a nearby chest and a rubber glove was found in the debris just above the victim's buttocks. Four Polaroid snapshots of Appellant and two billfolds, one lying on top of the other, were found in a dresser drawer also nearby the victim's bed. The

top wallet contained Lykins' driver's license while the wallet underneath contained documents belonging to Appellant. An autopsy revealed that Lykins died of asphyxia due to strangulation. The attending pathologist concluded that Lykins died before the fire but no earlier than 8:30 p.m. on September 5. An expert witness for the State testified that the crime scene indicated homosexual activity and possibly bondage or sado-masochism. There was introduced at trial certain evidence showing that Appellant and Lykins had engaged in a homosexual relationship for several years prior to this murder.

## I

Dr. Roger Fossum, a pathologist, conducted an autopsy on Lykins. At trial, Dr. Fossum testified to the following:

—Lykins' face was congested with blood and petechial hemorrhages were on his face, within the whites of his eyes, on his heart and on his lungs indicating that Lykins died by asphyxia due to strangulation;

—the skin surrounding the burned areas on Lykins' body was essentially normal and no soot was present within the lungs or stomach indicating that Lykins died before the fire;

—the appearance of Lykins' head wound indicated that it was caused by a blunt instrument and inflicted shortly before death;

—the absence of bruising or hemorrhaging beneath the ropes tied to Lykins' wrists and feet indicated that he was bound prior to the fire; and

—the *livor mortis* pattern created by the pooling and coagulation of Lykins' blood after death indicated that Lykins' body was initially face-up for one-half hour to twelve hours after death and then turned face-down. During Dr. Fossum's testimony before the jury, he introduced and commented upon each of State's Exhibits E–1 through E–14. Said Exhibits were a series of photographic slides depicting Lykins' body before and during Dr. Fossum's autopsy. Appellant now claims that it was reversible error

to admit these fourteen Exhibits because of their number and because they were gruesome to observe and tended to inflame the passions of the jury so as to unjustly prejudice Appellant.

Autopsy photographs are admissible when relevant to a victim's cause of death and illustrative of a witness' testimony. *Moore v. State,* (1981) Ind., 414 N.E.2d 558; *Bond v. State,* (1980) Ind., 403 N.E.2d 812, *reh. denied.* The fact that the photographs are gruesome does not in itself render them inadmissible; the real inquiry is whether or not the photographs are relevant to the issues in the case. *Horne v. State,* (1983) Ind., 445 N.E.2d 976, *reh. denied; Warrenburg v. State,* (1973) 260 Ind. 572, 298 N.E.2d 434, *reh. denied.* The test for determining whether such photographs are relevant is whether or not a witness would be permitted to verbally describe that which the photographs depict. *Rowan v. State,* (1982) Ind., 431 N.E.2d 805, *reh. denied; Bray v. State,* (1982) Ind., 430 N.E.2d 1162. We do not find that the trial judge abused his discretion by permitting the admission of the twelve photographic slides denominated Exhibits E–1 through E–12 in consideration of the facts of this case and the testimony of Dr. Fossum who sponsored said Exhibits. Although these Exhibits were admittedly gruesome, they nevertheless depicted certain specific facts and circumstances of this case. Dr. Fossum's testimony clearly related his autopsy observations, as illustrated by Exhibits E–1 through E–12, to the State's theory of the chain of events in this case. Exhibits E–1 through E–12 were relevant, therefore, and were properly admitted. Exhibits E–13 and E–14 should not have been admitted. We already have held, however, that the error occasioned by their admission under similar facts and circumstances in a companion case was harmless. *Loy v. State,* (1982) Ind., 436 N.E.2d 1125. We now so hold with respect to this case. There is no reversible error on this issue in this case.

## II

Appellant also claims that the trial court committed reversible error by ad-

mitting into evidence State's Exhibits D–7, D–11, D–14, D–16, D–24 through D–32, and D–34 through D–39. Said Exhibits were photographs of the crime scene. Appellant argues that although no single photograph was so prejudicial as to overwhelm its relevance when considered alone, it was unduly cumulative to admit all of the photographs together because doing so permitted the State to overemphasize the fact that Lykins was brutally killed. An examination of these Exhibits, however, reveals that they depict various aspects of the scene at the victim's trailer. Specifically, the photographs show the general layout of the trailer's interior, its condition after the fire, and the position of Lykins' dead body in his bedroom. Photographs of a crime scene are generally admissible because they are competent and relevant aids by which a jury can orient itself to best understand the evidence submitted to it. These photographs were taken from different angles and depict different aspects of the victim's dead body, the room in which it was found and the other interior areas of the victim's trailer home. We find no error in their admission. *Goodrich v. State,* (1981) Ind., 426 N.E.2d 1316; *Smith v. State,* (1981) Ind., 420 N.E.2d 1225; *Drollinger v. State,* (1980) Ind., 408 N.E.2d 1228; *Bond, supra.*

### III

■ Appellant moved for a change of venue from Jay County and for permission to individually *voir dire* the prospective jurors because of the extensive newspaper coverage surrounding this crime. The State concedes that this crime precipitated extensive newspaper coverage in the Jay County area, some of which was prejudicial to Appellant. Most of the coverage, however, was reported approximately eight months before the trial of this cause. We believe that the State correctly contends that for a defendant to establish the good cause necessary to warrant a discretionary change of venue, he must produce evidence of community bias or prejudice sufficient to convince the trial court that he cannot obtain a fair trial in that county. This Court has held:

"We will not reverse a trial court in its judgment on this issue even if there was a showing of some prejudice, where there was no reason to believe that any juror was so infected with preconceived opinions as to have been unable to judge the defendant wholly upon the law and evidence adduced at the trial."

*Willard v. State,* (1980) Ind., 400 N.E.2d 151, 156. We also have held that a fair trial can be had even though a juror may have entertained a preconceived opinion as to a defendant's culpability if said juror can lay aside his impression or opinion and render a verdict on the evidence presented in court. *Drollinger,* 408 N.E.2d at 1235, quoting *Murphy v. Florida,* (1975) 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589, and *Irvin v. Dowd,* (1961) 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751.

A hearing on Appellant's motion for change of venue was held on October 16, 1979. At that time, the trial judge denied said motion but indicated that he would "play it by ear" and reconsider the matter if necessary. The trial judge also said that he would conduct a careful and thorough *voir dire* of the jury panel to insure an impartial jury. A special judge subsequently was appointed. On April 30, 1980, the special judge denied Appellant's motions to individually *voir dire* the jury panel and for additional peremptory challenges. Appellant now claims that he was prejudiced by the denial of his several motions but fails to specify how he was prejudiced. We find that Appellant was allowed to *voir dire* the jury panel in unrestricted fashion. In fact, many prospective jurors were excused for cause including those who suggested that they had a preconceived opinion of Appellant's guilt or innocence and would not be able to impartially decide his case.

■ A trial judge has broad discretion to regulate the form and substance of a *voir dire* examination. To establish error, an abuse of discretion must be shown to have prejudiced a defendant such that a fair trial was impossible. *Hopkins v. State,* (1981) Ind., 429 N.E.2d 631; *Wickliffe v. State,* (1981) Ind., 424 N.E.2d 1007. Appellant

concedes that each of the jurors considering his case stated that he or she had formed no opinion as to Appellant's guilt or innocence and would be able to render a verdict based on the evidence presented at trial. Appellant, therefore, makes no showing that he was prejudiced by the manner in which the special judge regulated *voir dire* in this case. Furthermore, the record shows that Appellant did not exhaust the peremptory challenges he was given. There is no error on this issue. *Underhill v. State,* (1981) Ind., 428 N.E.2d 759; *Drollinger, supra; Pine v. State,* (1980) Ind., 408 N.E.2d 1271, *reh. denied; Willard, supra; Brewer v. State,* (1979) 271 Ind. 122, 390 N.E.2d 648; *Grooms v. State,* (1978) 269 Ind. 212, 379 N.E.2d 458, *cert. denied,* (1979) 439 U.S. 1131, 99 S.Ct. 1053, 59 L.Ed.2d 93.

## IV

Police Officer Paul Prater testified before the jury that he found four Polaroid snapshots of Appellant in a dresser drawer in the victim's bedroom. The jury was not told, however, that the photographs depicted Appellant nude and sexually aroused. Appellant did not object to Prater's testimony but did object to the admission of the four photographs into evidence contending that they were far more prejudicial than probative in value. The trial court agreed and refused to show the four snapshots to the jury. Prater's testimony about finding photographs of Appellant in the victim's bedroom was permitted to stay in evidence since said testimony was determined relevant to show a relationship between the victim and Appellant. Appellant now argues that the trial court erred by admitting Prater's testimony. Appellant, however, did not object to this testimony at trial and therefore waived the issue. *Landrum v. State,* (1981) Ind., 428 N.E.2d 1228; *Morris v. State,* (1980) Ind., 406 N.E.2d 1187. The fact that Appellant moved *in limine* to exclude any reference to the photographs does not preserve the issue for appellate review since he did not object to the admission of Prater's testimony at trial. *Wilson v. State,* (1982) Ind., 432 N.E.2d 30; *Waters v. State,* (1981) Ind., 415 N.E.2d 711.

## V

Officer Prater also testified that while searching the victim's trailer home after the fire, he found two billfolds in a dresser drawer in the victim's bedroom. One of the billfolds had been placed on top of the other. The wallet on top contained the victim's driver's license while the bottom wallet contained identification belonging to Appellant. Appellant did not object to the admission of his billfold but did object to the admission of the decedent's billfold and driver's license. Appellant argued that since a person might be expected to place his wallet in a drawer at home, the decedent's wallet and license were irrelevant evidence. The State contended that the victim and Appellant were engaged in a homosexual relationship and that this relationship might have provided a motive for the instant murder. The State therefore argued that it was material and relevant to show that the wallets were in the drawer together. We see no error on this issue. Evidence having a tendency to prove a material fact is relevant and admissible even though its tendency to so prove may be slight. *Armstrong v. State,* (1982) Ind., 429 N.E.2d 647; *Hill v. State,* (1979) 271 Ind. 549, 394 N.E.2d 132; *Jones v. State,* (1979) 270 Ind. 285, 385 N.E.2d 426. These exhibits were found at the crime scene and were relevant to show the relationship between the victim and Appellant. The trial court did not err by permitting their admission.

## VI

Officer Larry Prichard identified State's Exhibit K as a rubber surgical glove which he removed from the debris found covering the victim's body. Dr. Joy, a psychologist, subsequently testified that the crime scene was compatible with homosexual activity and probable bondage or sadomasochism. Dr. Joy based this opinion upon the way in which the victim was tied to his bed, the lack of evidence indicating a struggle and the paraphernalia present including a rubber glove and an open jar of

vaseline. The State's evidence indicated that items identifying Appellant were found in the victim's bedroom, that the victim and Appellant had engaged in a homosexual relationship for several years and that Appellant felt animosity toward the victim because of this relationship. The State accordingly contends that the evidence reasonably tended to prove that the victim died during a homosexual encounter and that the rubber glove, therefore, was properly admitted to support this conclusion. Evidence which has a tendency to prove a material fact is relevant and admissible even though such tendency may be slight. *Armstrong, supra; Hill, supra; Jones, supra.* Since Exhibit K was offered to show the circumstances under which the victim died and linked Appellant to those circumstances, the trial court properly admitted the exhibit into evidence.

## VII

The victim was murdered during the evening of September 5, 1979, in his trailer home at the Oakwood Trailer Park. At trial, the State called Jay County Sheriff Upp who testified over objection that during September 5 and 6, 1979, his office received no report of criminal activity at said trailer park besides Lykins' murder. In addition, the communications coordinator at the Redkey State Police Post, Officer Ring, testified over objection that no crime reports were received by the State Police from said trailer park during September 5 and 6, 1979, other than with respect to the instant murder. Mary Joann Hall subsequently testified that during the early morning hours of September 6, Appellant and Steve Loy came to her house, placed personal effects from their pockets on her television set and asked her to take them some place. Appellant also borrowed a shirt which he put on over his jacket bearing a swastika on the back. Appellant directed Hall to a location from which the Oakwood Trailer Park was visible and told her to turn off the lights of her car. Appellant and Loy thereupon crawled out a window to avoid turning on the car's interior lights. Hall also testified that she noticed Appellant, with a dark ski mask in his hand, and Loy trot toward the trailer park. Hall immediately returned home and soon thereafter Loy and Appellant also returned, breathing heavily. Loy was carrying a green bag which made a metallic, rattling sound. The evidence adduced at trial indicated that some hand guns were found to be missing from the victim's home.

Appellant now argues that it was reversible error to admit the testimony of Officers Upp and Ring because their testimony was not probative evidence of any of the elements of the instant crime and did nothing more than prejudice Appellant before the jury. The State argues that the testimony of Mary Hall reasonably inferred that Appellant went to the Oakwood Trailer Park to commit a crime. The State further argues that the testimony of Officers Upp and Ring accordingly inferred that Appellant went to the Oakwood Trailer Park to commit the instant crime. Evidence which throws or tends to throw light on the guilt or innocence of a defendant is relevant. *Armstrong, supra; McPhearson v. State,* (1969) 253 Ind. 254, 253 N.E.2d 226, *reh. denied* (1970). Relevant testimony has a logical tendency to prove a material fact. The fact that its probative value is weak and its tendency to prove a material fact is slight goes to the weight of the evidence and not to its admissibility. *Armstrong, supra; Young v. State,* (1980) Ind., 409 N.E.2d 579. A trial court has wide latitude in ruling on the admissibility of evidence and in determining its relevancy. *White v. State,* (1981) Ind., 425 N.E.2d 95; *Barnes v. State,* (1975) 263 Ind. 320, 330 N.E.2d 743. Though the probative value of the testimony of Officers Upp and Rugg may arguably be considered slight, we fail to find that Appellant was prejudiced by their testimony to such an extent that reversal is required.

## VIII

Appellant next claims that the trial court erred by permitting Dr. Kenneth Joy to testify as an expert witness with respect to

the crime scene. Appellant specifically contends that Joy was qualified only in general psychology and was not qualified to testify about matters of human sexuality. In the instant case, Joy testified that the crime scene was compatible with homosexual activity and probably bondage or sado-masochism.

Kenneth Joy had been a psychologist for thirteen years and was the Director of the Psychology Clinic at Ball State University. His formal education consisted of a Bachelor's degree in Education and a Masters and Doctorate in Psychology. He specialized in forensic psychology and held a certificate for the unlimited practice of psychology in the State of Indiana. Joy testified that he was experienced in dealing with sexual deviancy having worked with clients experiencing problems in sexual adjustment and sexual deviancy.

■ Whether or not a witness qualifies as an expert lies within the trial court's sound discretion. *Rowan, supra; Lineback v. State,* (1973) 260 Ind. 503, 296 N.E.2d 788, *reh. denied* 260 Ind. 511, 301 N.E.2d 636, *cert. denied* (1974) 415 U.S. 929, 94 S.Ct. 1440, 39 L.Ed.2d 487. Our Court of Appeals has held that to qualify a witness as an expert, the following two requirements must be met: 1) the subject matter of the witness' opinion must be shown to be so distinctly related to some scientific field or occupation as to be beyond the knowledge of the average lay person, and 2) the witness must be shown to have sufficient skill, knowledge or experience in said field or occupation to indicate that the witness' opinion or inference will probably aid the trier of fact in its search for truth. *City of Indianapolis v. Robinson,* (1981) Ind.App., 427 N.E.2d 902, *trans. denied* (1982). Appellant argues in reliance upon *Reburn v. State,* (1981) Ind., 421 N.E.2d 604, *reh. denied.* Our holding in *Reburn,* however, does not support Appellant's contention. In *Reburn,* a psychologist was questioned in direct and hypothetical form during his direct examination by the defense on whether certain facts presented to him were consistent with an accidental shooting. The trial court sustained objections to said questioning. Justice DeBruler writing for this unanimous Court held:

"Opinions are not properly permitted to be given in testimony in instances where the jurors are as well qualified to form an opinion upon the facts as the witnesses. *Brunker v. Cummins,* (1892) 133 Ind. 443, 32 N.E. 732; *Carter v. State,* (1980) Ind. App., 412 N.E.2d 825. The jurors as ordinary men and women possessed the full capacity to evaluate the facts and circumstances shown to surround this shooting as to their being consistent with an accidental shooting. The court ruling was therefore correct, and did not, as contended, impede to any degree the defense in the presentation of its theory of the case."

*Reburn,* 421 N.E.2d at 606.

■ We agree with the State that the trial court did not abuse its discretion by adjudging the area of deviant sexual practices beyond the knowledge of the average lay person. Furthermore, the trial court was presented sufficient evidence to show that witness Joy had the education and experience in the field of human sexuality to qualify as an expert. The trial court did not, therefore, abuse its discretion by permitting Joy to testify.

## IX

■ Appellant next claims that the trial court committed reversible error by admitting evidence of prior sexual relations between himself and the victim. Officer Pritchard testified that Appellant told him that he maintained homosexual relations with the decedent during a period of several years and until approximately thirty days prior to the murder. Pritchard further testified that Appellant told him that he disliked the decedent for pressing him to continue the homosexual relationship. Officer Mann testified that Appellant told him that he had a number of sexual encounters with the decedent and that on one occasion the decedent asked him to "be mean" to him. Witness Mary Hall testified that Appellant once pointed the victim out to her and

stated that the victim "was his queer cousin and he hated him." This Court has held: "... It is the general rule that evidence of criminal activity other than that charged is inadmissible on the question of guilt. However, such evidence may be admitted to show intent, motive, purpose, identification, or common scheme or plan. Evidence of unrelated criminal activity which is relevant to a fact in issue is not inadmissible merely because it tends to show guilt of another crime. The evidence here was admissible as tending to show the guilty intent and motive of defendant as well as to explain the prior relationship between defendant and [the victim]." [citations omitted].

*McManus v. State,* (1982) Ind., 433 N.E.2d 775, 778. The evidence of sexual relations between Appellant and the victim showed the nature of Appellant's relationship with the victim and was relevant to the issue of motive. This testimony also was further corroborative of the expert witness' testimony that the crime scene was compatible with homosexual activity and probably bondage or sado-masochistic practices. The trial court therefore properly admitted the evidence. *Warfield v. State,* (1981) Ind., 417 N.E.2d 304; *Quinn v. State,* (1976) 265 Ind. 545, 356 N.E.2d 1186.

### X

Officer Prichard was permitted to testify at trial about certain statements made to him by Appellant detailing Appellant's whereabouts and activity during the evening of September 5, 1979. Upon objection, the trial court queried the State on whether it intended to show that said statements were false. The State assured the trial court that the State so intended and the trial court accordingly permitted Prichard to testify. Appellant now contends that the State failed to make the dispositive showing of Appellant's duplicity and that, absent such showing, Prichard's testimony on Appellant's statements was inadmissible. The State, however, argues that Prichard's testimony tended to demonstrate Appellant's attempt to conceal or suppress implicating evidence and to manufacture exculpatory evidence which is relevant to show Appellant's consciousness of guilt.

Appellant supports his argument by interpreting the facts to show that the victim died between 8 and 10 p.m. on September 5, 1979. The expert testimony, however, was that the decedent died no earlier than 8:30 p.m. and other evidence tended to show that the decedent died sometime during the early morning of September 6. Officer Prichard testified that on the day after the murder, Appellant told him that he had been to his brother's house, Bill's Bar and a Sunoco service station prior to 11:00 p.m. Prichard further testified that Appellant told him that at approximately 11:00 p.m., he and Steve Loy went to Union City, picked up some girls and took them to Loy's Union City Apartment before returning to the Portland area sometime between 4:00 and 5:00 a.m. State's witness Mary Hall testified that at approximately 2:30 a.m. on September 6, Appellant and Loy came to her house in Portland and borrowed her car. They returned in ten to twenty minutes and had Hall drive them to the vicinity of the victim's trailer. Hall immediately returned home, to which Loy and Appellant also returned approximately twenty minutes later. The victim's neighbors testified that shortly after 2:30 a.m., they heard two people run up the steps of the victim's trailer, slide open the door and go inside. About one-half hour later they heard the two people leave. Approximately ten minutes after that they saw the victim's trailer on fire. The bartender at Bill's Bar testified that Appellant and Loy were well known to her and that they never were in Bill's Bar during the night of the murder. Other witnesses contradicted Appellant's statements as to his whereabouts during that night.

Any testimony tending to show an accused's attempt to conceal implicating evidence or to manufacture exculpatory evidence may be considered by the trier of fact as relevant since revealing a consciousness of guilt. *Washington v. State,* (1980) Ind., 402 N.E.2d 1244; *Matthew v. State,* (1975) 263 Ind. 672, 337 N.E.2d 821, *reh. denied; Harris v. State,* (1972) 258 Ind. 341, 281

N.E.2d 85. The fact that some of Appellant's statements may have been true does not change the fact that they were false with respect to the hours critical in this case. We agree with the State that to the extent Appellant's exculpatory statements were false, they were admissible to show his consciousness of guilt. To the extent that Appellant's statements were true, they did not prejudice him. The trial court did not err by admitting Prichard's testimony about the statements Appellant made to him.

## XI

Clay Aker testified at trial that during the evening of Wednesday, September 5, 1979, Steve Loy came to his trailer followed by Appellant who came approximately one-half hour later. Loy and Appellant subsequently left Aker's trailer together around 11:00 p.m. Aker further testified that during the following Sunday and while he, Loy and Appellant were together outside Appellant's home, Loy told Aker to be sure to say to anyone who might ask that Loy and Appellant arrived at his trailer at the same time on September 5. According to Aker, this statement was made in Appellant's presence and while Appellant was listening. Appellant now argues that Aker's testimony should not have been admitted into evidence since it was hearsay. We do not agree.

 Hearsay evidence is in-court testimony about an extra-judicial statement offered to prove the truth of the matters asserted therein. *Bray v. State,* (1982) Ind., 430 N.E.2d 1162; *Morris v. State,* (1980) Ind., 406 N.E.2d 1187. Such evidence is objectionable when the value of the testimony rests on the credibility of the declarant and the declarant is not in court or otherwise available for cross-examination. *McClain v. State,* (1980) Ind., 410 N.E.2d 1297. The State here contends that the only matter asserted by Aker's rendition of Loy's statement was that Loy and Appellant both arrived at Aker's trailer at the same time on September 5. Obviously Aker's testimony was not offered by the State to prove the truth of this assertion.

The statement, therefore, was not hearsay by definition.

The State also contends that Aker's testimony was admissible to show a further attempt by Appellant and accomplice Loy to manufacture false evidence. Certain evidence adduced at trial showed that Loy and Appellant went to the crime scene together under suspicious circumstances and shortly before the victim's trailer was discovered aflame. Other evidence indicated that Appellant gave false statements concerning his activities and whereabouts during the night of the instant crime. The State therefore correctly submits that Loy's statement and Appellant's silence in the face thereof were relevant evidence of Appellant's attempt to manufacture exculpatory evidence and of his consciousness of guilt. *Washington, supra; Matthew, supra; Harris, supra.*

## XII

 Mary Hall testified for the State about her involvement with Appellant and Loy in certain activities on September 6, 1979. After dropping Appellant and Loy off nearby the victim's trailer, Hall returned home. Appellant and Loy soon returned to Hall's home whereupon Loy said in Hall's presence: "What are we going to do with her?" Appellant made no response to this comment. The inference was, of course, that Hall might implicate Appellant and Loy in the instant murder when eventually discovered. Appellant objected on hearsay grounds to Hall's testimony regarding Loy's statement. Hall's recall of Loy's statement was not hearsay, however, since the veracity of Hall's testimony was not determined by the credibility of Loy but by the credibility of Hall who testified about what she personally heard and observed. The fact that Loy was not in court and subject to cross-examination did not make Hall's testimony inadmissible and improper in this context. *McClain, supra.* The trial court did not, therefore, err by admitting Hall's testimony about Loy's statement.

 Appellant further claims that the trial court erred by admitting the testimony

of Luetta Hunt. Hunt testified without objection that during the day of September 6, 1979, she went shopping with Mary Hall. She also testified that while shopping, Hall told her about certain events which transpired during that day's early morning hours. Hunt did not detail what Hall told her. The evidence developed that Hall did not tell the police for several days about her knowledge of Appellant's activity on September 6. Hunt's testimony was relevant, therefore, to show that Hall related to the police the same facts which she related to Hunt. Since Appellant did not object to Hunt's testimony at trial, he has waived review on this issue. *Morris, supra.*

## XIII

Appellant next claims that the evidence before the jury was insufficient to find him guilty beyond a reasonable doubt of murder. In reviewing an insufficient evidence allegation, this Court will neither reweigh the evidence nor resolve questions of credibility but will look to the evidence and all reasonable inferences therefrom which support the verdict of the jury. A conviction will be affirmed if, from that viewpoint, there is evidence of probative value from which the trier of fact could reasonably infer the existence of each element of the offense beyond a reasonable doubt. *Bruce v. State,* (1978) 268 Ind. 180, 252, 375 N.E.2d 1042, 1080, *cert. denied,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662. When the evidence supporting a conviction is circumstantial, the scope of review is identical to that used when the evidence is direct. Circumstantial evidence standing alone may support a conviction. *Biggerstaff v. State,* (1982) Ind., 432 N.E.2d 34; *Collins v. State,* (1980) Ind., 413 N.E.2d 264.

Although the evidence in the instant case was circumstantial, it was sufficient to justify the trier of fact in finding that Appellant was guilty beyond a reasonable doubt. The circumstances surrounding the instant killing suggested a homosexual encounter. Evidence including Appellant's own statements indicate that Appellant and the victim engaged in a homosexual rela-

tionship for several years and that Appellant disliked the victim for pressing him to continue that relationship. On at least one occasion, the victim asked Appellant to "be mean" to him and on other occasions Appellant indicated his animosity toward the victim. Appellant's belongings were found in and about the victim's bedroom tending to corroborate their homosexual relationship and Appellant's recent presence in the victim's trailer. Appellant also was placed at the crime scene under suspicious circumstances just prior to when the victim's trailer was discovered on fire. Accordingly, we find that there was ample and sufficient evidence from which the jury could find or infer beyond a reasonable doubt that Appellant committed the crime of murder.

## XIV

Appellant next claims that the trial court erred by allowing the State to use certain diagrams to illustrate its final argument. Appellant specifically claims that these diagrams were not in evidence and should not have been permitted. Appellant concedes, however, that the record does not disclose what was displayed on the diagrams. It is impossible to determine whether or not the diagrams did, in fact, refer to facts not in evidence and if they did, whether they were prejudicial to Appellant and to what extent. There is nothing in the record to support Appellant's contention, therefore, this Court finds itself unable to consider this alleged error. A reviewing court will not consider an allegation of error when there is nothing in the record to support said allegation. *Smith v. State,* (1982) Ind., 432 N.E.2d 1363; *Smith v. State,* (1981) Ind., 422 N.E.2d 1179; *Bobbitt v. State,* (1977) 266 Ind. 164, 361 N.E.2d 1193; *Schuman v. State,* (1976) 265 Ind. 586, 357 N.E.2d 895.

## XV

Prior to trial, Appellant moved for a separation of witnesses which the trial court ordered. Appellant subsequently requested that his wife, mother, father and brother be allowed to remain in the court-

room although he might call them as witnesses. The State objected to the family members remaining in court since Appellant had filed a notice of alibi listing certain of his family members as potential witnesses. The trial court ruled that each party would be permitted to keep only one of its witnesses in court. The State chose to keep Sheriff Upp in court. Appellant's family was given the option of choosing one member to stay and Appellant's mother was chosen. At trial, Appellant's mother and brother testified. Appellant now claims that the trial court abused its discretion by refusing to permit Appellant's family members to stay in the courtroom. He claims that he was prejudiced by the trial court's ruling because the absence of his family from the courtroom gave the jury the impression that his family did not support him. We find no merit to Appellant's contention of error on this issue. The separation of witnesses at trial is wholly within the trial court's discretion and such discretionary rulings will not be disturbed unless there is a manifest abuse of discretion. *Anthony v. State,* (1980) Ind., 409 N.E.2d 632. We find no showing of a manifest abuse of discretion in the instant case. The normal procedure attending a separation of witnesses is to allow each party to retain one witness in court. This was done here. The fact that Appellant may have gained some advantage by having his entire family in court with him does not transform the trial court's action into a prejudicial abuse of discretion. There is no error on this issue.

Finding no reversible error, the trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.