## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 26 2018, 9:09 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Curry,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

September 26, 2018

Court of Appeals Case No.
18A-CR-940

Appeal from the Marion Superior Court

The Honorable Kurt Eisgruber, Judge

Trial Court Cause No.
49G01-1606-MR-21318

**Bradford, Judge.**

# Case Summary

[1] Robert Curry was convicted of Level 2 felony voluntary manslaughter and Class A misdemeanor carrying a handgun without a license after he shot and killed Carl Rice, Jr. On appeal, Curry contends that the trial court abused its discretion in admitting certain evidence and that the evidence is insufficient to sustain his conviction. Concluding otherwise, we affirm.

# Facts and Procedural History

[2] As of May 23, 2016, Cyntoria Thornburg and Rice were involved in a romantic relationship and lived together. At some point that day, Cyntoria and Rice became involved in a domestic altercation. Cyntoria called her mother twice during the altercation, which lasted for more than an hour. During the second call, Cyntoria spoke to her brother, Michael Thornburg. After receiving Cyntoria's calls, her mother called Thornburg and Cyntoria's brother, Curry, and indicated that Cyntoria was being beaten and needed help. Soon thereafter, Curry, Mariah Echols, and Alexis Cole picked up Thornburg and the four made their way to Cyntoria and Rice's apartment.

[3] Upon arriving at the apartment, Curry and Thornburg looked through the window and observed that Rice had Cyntoria pinned against a wall. After Rice "backed off," Cyntoria let Curry, Thornburg, Echols, and Cole into the apartment. Tr. Vol. II, p. 97. As they entered, Curry and Thornburg instructed Cyntoria to leave the apartment.

[4] Once inside the apartment, Echols observed Thornburg hitting Rice and heard Curry ask Rice "why he kept hittin on his sister." Tr. Vol. II, p. 34. She observed Curry pull out a gun and point it at Rice. Echols also noticed that Cole "had her gun out too." Tr. Vol. II, p. 36. Echols observed Cole "rack her slide" and saw a bullet fall from the gun. Tr. Vol. II, p. 37. Feeling scared, Echols turned to leave the apartment. As she did so, she heard a gunshot. She ran from the apartment and was soon thereafter followed by Thornburg, Cole, and Curry. After the four left the apartment with Cyntoria, Thornburg asked Curry why he shot Rice. Curry responded "that s[***] had to happen" and "I hope he's dead." Tr. Vol. II, pp. 233, 118.

[5] On June 2, 2016, the State charged Curry with murder, Level 1 felony conspiracy to commit murder, and Level 5 felony carrying a handgun without a license. The conspiracy charge was dismissed prior to trial. The lesser-included offenses of Level 2 felony voluntary manslaughter and Level 5 felony reckless homicide were introduced to the jury as alternatives to the murder charge at trial.

[6] Two letters were introduced into evidence over Curry's objection during trial. The first letter was written by Curry while incarcerated prior to trial and sent to his girlfriend. In this letter, he instructed his girlfriend to have Thornburg write a second letter to the trial court using language included in the first letter. Thornburg subsequently sent the second letter to the trial court and largely used the language suggested by Curry.

Following trial, the jury found Curry guilty of Level 2 felony voluntary manslaughter and Class A misdemeanor carrying a handgun without a license. After the State dropped the Level 5 felony enhancement of the handgun charge, the trial court sentenced Curry to an aggregate twenty-five-year sentence.

# Discussion and Decision

On appeal, Curry contends that the trial court abused its discretion in admitting certain evidence and that the evidence is insufficient to sustain his conviction for Level 2 felony voluntary manslaughter.

# I. Admission of Evidence

The admission or exclusion of evidence is entrusted to the discretion of the trial court. We will reverse a trial court's decision only for an abuse of discretion. We will consider the conflicting evidence most favorable to the trial court's ruling and any uncontested evidence favorable to the defendant. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law. In determining whether an error in the introduction of evidence affected an appellant's substantial rights, we assess the probable impact of the evidence on the jury. Admission of evidence is harmless and is not grounds for reversal where the evidence is merely cumulative of other evidence admitted.

*Collins v. State*, 966 N.E.2d 96, 104 (Ind. Ct. App. 2012) (internal citations omitted). The trial court's ruling will be upheld "if it is sustainable on any legal

theory supported by the record, even if the trial court did not use that theory." *Rush v. State*, 881 N.E.2d 46, 50 (Ind. Ct. App. 2008).

[10] Curry asserts that the trial court abused its discretion by admitting two letters into evidence. Again, the first letter, which was written by Curry and sent to his girlfriend, instructed his girlfriend to have Thornburg write a letter to the trial court using language included in Curry's letter. The second letter, which was written by Thornburg and sent to the trial court, included most of Curry's suggested language. Curry argues that the trial court abused its discretion in admitting the two letters because they were not relevant and "admission of the letters served no purpose but to portray [him] as being manipulative and dishonest." Appellant's Br. p. 11. We disagree.

## A. Whether the Letters were Relevant

[11] "Any testimony tending to show an accused's attempt to conceal implicating evidence or to manufacture exculpatory evidence may be considered by the trier of fact as relevant since revealing a consciousness of guilt." *Grimes v. State*, 450 N.E.2d 512, 521 (Ind. 1983). Stated differently, "[w]here a person is accused of crime, a guilty consciousness may be inferred from attempted evasion, palpable falsehood, equivocation, or from suppression of facts, and a presumption of guilt is said to arise from the falsification of testimony by [the] accused." *Matthew v. State*, 263 Ind. 672, 677, 337 N.E.2d 821, 824 (1975).

[12] The first letter reveals a guilty consciousness in that it reveals that Curry felt responsible for Cole's incarceration in connection to Rice's death. It also

reveals that he blamed Thornburg for mentioning Cole in his initial statement to police. In the letter, Curry indicated that Thornburg needed "to say that [Cole] was not involved in any plans or conspiracies and that she was only there circumstantially. That will help us tremendously." State's Ex. 40. Curry further indicated that Thornburg should state that in giving his statements to police, he did not fully understand his rights, felt threatened and harassed by the detectives, and was afraid he would be arrested if he failed to tell the detectives what they wanted to hear. Curry also instructed Thornburg to state that neither Echols nor Cole ever entered the apartment and that he was not in the apartment at the time of the shooting. The second letter demonstrates that Thornburg largely used Curry's suggested language in writing to the trial court.

[13] Contrary to Curry's suggested statements, however, Echols's testimony established that both she and Cole entered the apartment. It also established that all four were in the apartment at the time of the shooting. Specifically, Echols testified that after she, Cole, Thornburg, and Curry entered the apartment, she observed Curry pull out a gun and point it at Rice. She further testified that she heard a gunshot as she turned to leave the apartment and was followed out of the apartment by Cole, Thornburg, and Curry. Echols's testimony was consistent with Thornburg's initial statement to police that both she and Cole entered the apartment and his testimony at trial that all four were in the apartment at the time of the shooting.

[14] Given the differences between Curry's suggested version of the facts and Echols's and Thornburg's accounts of what happened, one may reasonably

infer that the letters amounted to an attempt by Curry to falsify or manufacture certain testimony. The letters were therefore relevant as they supported an inference of guilt. *See Matthew*, 263 Ind. 672, 677, 337 N.E.2d at 824. As such, we conclude that the trial court did not abuse its discretion in finding the letters to be relevant, admissible evidence at trial.

## B. Whether the Letters had a Different Purpose

[15] Curry also argues that the trial court abused its discretion in admitting the letters because one could reasonably conclude that there was a different, non-nefarious purpose for Curry writing the first letter and requesting that Thornburg write the second. Specifically, he claims that because he was acting under hybrid representation, *i.e.*, having counsel while also making filings on his own behalf, the trial court should have recognized that his intent was nothing more than "to lock-down [Thornburg's] testimony as to the truth of what happened during the incident" and "[t]his was nothing more than what a defense counsel would do on behalf of a client, and nothing more than a prosecutor would do in preparation for trial." Appellant's Br. p. 11. Even assuming Curry was trying to "lock down" the evidence, given the facts and circumstances before the trial court, we will not disturb the trial court's different reasonable inference. *See McElfresh v. State*, 51 N.E.3d 103, 111 (Ind. 2016) (providing that although one could potentially infer varying intent from a letter written by the defendant, appellate courts will not disturb the trier-of-fact's credibility determinations relating to intent).

# II. Sufficiency of the Evidence

[16]     When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146–47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original).

[17]     In order to prove that Curry committed voluntary manslaughter, the State was required to prove that he knowingly or intentionally killed another human being while acting under sudden heat. Ind. Code § 35-42-1-3(a)(1). "The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder … to voluntary manslaughter." Ind. Code § 35-42-1-3(b). "Sudden heat occurs when a defendant is provoked by anger, rage, resentment, or terror, to a degree sufficient to obscure the reason of an ordinary person,

prevent deliberation and premeditation, and render the defendant incapable of cool reflection." *Conner v. State*, 829 N.E.2d 21, 24 (Ind. 2005).

## A. Whether the Evidence is Sufficient to Prove Curry Acted Knowingly or Intentionally

[18] Curry challenges the sufficiency of the evidence to prove that he acted knowingly or intentionally when he killed Rice. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2 (b). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a).

[19] Curry claims that the evidence establishes that he, at most, acted negligently as the "evidence most favorable to the verdict was that there was a struggle for the gun and the gun discharged killing Rice." Appellant's Br. p. 18. Review of the record, however, reveals otherwise. While both Curry and Thornburg indicated that the gun discharged during a struggle between Curry and Rice, Echols testified that she did not see Curry and Rice struggling over the gun. The jury, acting as the trier-of-fact, was free to credit Echols's testimony over self-serving statements made and testimony given by Curry and Thornburg, respectively. *See Kilpatrick v. State*, 746 N.E.2d 52, 61 (Ind. 2001) ("It is for the trier of fact to resolve conflicts in the evidence and to decide which witnesses to believe or disbelieve."); *In re J.L.T.*, 712 N.E.2d 7, 11 (Ind. Ct. App. 1999) ("[I]t is precisely within the domain of the trier of fact to sift through conflicting

accounts of events. Not only must the fact-finder determine whom to believe, but also what portions of conflicting testimony to believe.").

[20] In addition, Curry made statements immediately following the shooting from which the jury could infer that he acted intentionally. The record reveals that after they left Rice's residence, Thornburg asked Curry why he shot Rice. Curry responded "that s[***] had to happen" and "I hope he's dead." Tr. Vol. II, pp. 233, 118.

[21] The evidence is sufficient to support the inference that Curry acted knowingly or intentionally when he shot Rice. Curry's claim to the contrary effectively amounts to an invitation to reweigh the evidence, which we will not do. *See Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002) (providing that upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses).

## B. Whether the Evidence is Sufficient to Prove Curry Acted with Sudden Heat

[22] Curry also challenges the sufficiency of the evidence to prove that he acted with sudden heat. The trial court correctly instructed the jury that sudden heat "is a mitigating factor that reduces [what] otherwise would be murder to voluntary manslaughter." Appellant's App. Vol. III, p. 35. It further instructed the jury that sudden heat

> means a mental state which results from provocation sufficient to excite in the mind of the defendant such emotions as anger, rage, sudden resentment, jealousy, or terror sufficient to obscure the

reason of an ordinary person, and as such prevents deliberation and premeditation, excludes malice, and renders the defendant incapable of cool reflection prior to acting.

Appellant's App. Vol. III, p. 38.

[23] The jury heard evidence indicating that Curry arrived at the apartment his sister shared with Rice armed with the knowledge that Rice was physically abusing his sister and had been doing so for over an hour. Curry also knew that Rice had previously physically abused his sister. In addition, Curry observed the abuse when he saw Rice physically restraining his sister by holding her against a wall. When Curry asked Rice why he "kept hittin on his sister," Rice indicated that he "needed to teach her a lesson." Tr. Vol. II, p. 34. We conclude that these facts are such that would enable the jury to reach the reasonable inference that in shooting Rice, Curry reacted with anger and rage sufficient to render him incapable of cool reflection. Given that we assess only whether the verdict *could* have been reached based on reasonable inferences that may be drawn from the evidence presented, we conclude that the evidence is sufficient to prove that Curry acted with sudden heat. *Baker*, 968 N.E.2d at 229. Curry's claim to the contrary again effectively amounts to an invitation to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

[24] The judgment of the trial court is affirmed.

Bailey, J., and Mathias, J., concur.